DARWIN CONSTRUCTION CO., INC., Appellant,

v.

UNITED STATES, Appellee.

Appeal No. 86–1370.

United States Court of Appeals, Federal Circuit.

Feb. 12, 1987.

Joel S. Rubinstein, Sadur & Pelland, Chartered, Washington, D.C., argued for appellant. With him on the brief was Sheira Miller, of counsel.

Sharon Y. Eubanks, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., argued for appellee. With her on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director. Allan Elmore, NAVFACENGCOM, Washington Navy Yard, Washington, D.C., of counsel.

Before NIES, Circuit Judge, COWEN, Senior Circuit Judge, and NEWMAN, Circuit Judge.

COWEN, Senior Circuit Judge.

Appellant (Darwin) appeals from a reconsidered decision of the Armed Services Board of Contract Appeals (ASBCA or Board) which had reversed its earlier holding. The Board initially converted a termination for default into a termination for the convenience of the Government. Upon Government's motion for reconsideration, the Board reversed its earlier decision and upheld the termination for default. We reverse the Board's amended decision and remand with instructions for the Board to convert the termination for default into a termination for the convenience of the Government in accordance with the Board's initial decision.

## BACKGROUND

Darwin was awarded a fixed price construction contract on June 3, 1983, for certain improvements to the Propellant Machinery Facility (PMF) at the Naval Ordnance Station (NOS) in Maryland. Contract work was to be completed within 150 calendar days, by November 15, 1983.

The contract provided that the contractor would be allowed access to the construction site only during two 14 calendar day periods which were to be separated by another period of at least 14 calendar days during which time normal Naval production operations at the facility would take place. Based upon the schedule agreed upon between the parties, the last day for construction was to have been November 7, 1983. At the conclusion of this second 14-day work period, Darwin had completed approximately 65 percent of the required contract work.

In response to a "show cause" letter Darwin noted that the late delivery of necessary equipment made it impossible for the contract to be completed by November 7. Darwin, nevertheless, asserted that it was physically and financially ready to complete the remaining contract work within a two week period beginning on December 17, 1983. Nevertheless, on February 13, 1984, the Navy terminated the contract for default, claiming that Darwin had not diligently performed during the two 14-day periods when it had access to the site. The Navy alleged that a 2-week shutdown of the facility during December was not possible in order to permit Darwin to complete the contract.

On appeal to the ASBCA, the Board found that "on the record * * * no excusable cause for delay has been proven by the appellant. Therefore, as of 15 November, the date of completion for the performance of the captioned contract, Darwin was in default." *Darwin Constr. Co.*, ASBCA No. 29340, 84-3 BCA ¶ 17,673 at 88,149 (1984).

Despite its finding of default, the Board held that the termination for default "must be converted to one for convenience of the

Government." The decision stated that "the Board finds that this termination for default was arbitrary and capricious because it is evident to the Board that *the default action was taken solely to rid the Navy of having to further deal with Darwin.*" (Emphasis supplied).

The Board's conclusion regarding the arbitrary action of the contracting officer was based, among others, on the following findings of fact made by the Board:

The only reason Darwin was unable to complete the work in time was that the material needed for the unfinished portion was not delivered in the second 2–week period for performing the contract. On November 15, 1983, the Navy knew that Darwin had performed 65 percent of the work in an acceptable manner, and there was no evidence to suggest that the contractor was financially unable to complete the remainder of the work.

The Navy knew that renewed performance could not begin at the very earliest until August 1984, and therefore, the Navy had no basis for concluding that Darwin's late performance in November 1983 would still be a viable cause for delay in August 1984—9 months later.

The failure of Darwin to complete the work on time did not interfere with the Navy's use of the building, which was still used for the production of explosives since Darwin had restored the building into usable condition. Darwin contemplated working from December 27 through December 31, 1983, having estimated that the remaining work could be completed in 4 days. There was no urgency associated with the contract.

When the contract was terminated on February 3, 1984, the Navy estimated the next available date when the remaining work could be completed as August 1984, but by the date of the hearing, this hoped-for completion date had regressed to January 1985.

At the time Darwin was performing work on the contract, many other construction contracts were being performed at the same ordnance station, and the Navy was content to collect liquidated damages for those contracts in which performance had been delayed.

Although needed material was delivered by October 4, 1983, Darwin did not receive Navy approval of the material until October 19, 1983. At that time, Darwin submitted a written request for a time extension on account of that delay. The Board found that there was no evidence in the record that the contracting officer had acted on that request as required by General Provision 5 of the contract, entitled "Termination for Default—Damages for Delay—Time Extension." With respect to the default termination, the Board observed that "this termination for default exudes an odor piscatorial," citing *Alinco Life Insurance Co. v. United States,* 373 F.2d 336, 341, 178 Ct.Cl. 813 (1967).

Accordingly, the Board converted the default termination into one for the convenience of the Government.

On the basis of the Government's motion for reconsideration, the Board reversed its initial decision and upheld the termination for default. *Darwin Constr. Co.,* ASBCA No. 29340, 86–2 BCA ¶ 18,959 (1986).

In reversing its decision on reconsideration, the Board, at the Government's urging, noted that the Board should recognize and follow the decision in *Kalvar Corp. v. United States,* 543 F.2d 1298, 211 Ct.Cl. 192 (1976), *cert. denied,* 434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 89 (1977), in which the court held that "well-nigh irrefragable proof" is required to induce the court to abandon the presumption of good faith dealing by public officials.

However, the Board again stressed its determination that the action of the contracting officer in terminating the contract was "arbitrary and capricious, given the unique circumstances present at the time of default."

Furthermore, the Board stated that its initial decision was at variance with a decision by a Senior Deciding Group which held that once the right of termination is acquired by the Government and if that right

is not lost by the Government because of its conduct, the Board will uphold the termination for default without any inquiry into the "motives" or judgment of the contracting officer leading to the decision to terminate, citing *Nuclear Research Associates, Inc.,* ASBCA No. 13563, 70–1 BCA ¶ 8,237 (1970). Since this holding was binding on the Board's panel in this case, the Board declared that the holding should have been followed in the initial decision. Therefore, it upheld the termination for default.

## DISCUSSION

### I.

■ Darwin accepts all of the findings of fact made by the Board in its initial decision. However, Darwin contends that the Board erred as a matter of law in holding that it could not inquire into the motives or judgment of the contracting officer in electing to terminate the contract for default, once the Government determined that the contractor was in technical default. We agree that this rule of administrative restraint is legally erroneous and contrary to long-established judicial precedent as hereinafter set forth. Moreover, the Board's holding is a ruling on a question of law, which is neither final nor binding on the court. *Zinger Construction Co. v. United States,* 807 F.2d 979, 981 (Fed. Cir.1986), citing *American Electronic Laboratories, Inc. v. United States,* 774 F.2d 1110, 1112 (Fed.Cir.1985).

### II.

As stated above, the Board found that the termination for default was "arbitrary and capricious because it was evident to the Board that the default action was taken solely to rid the Navy of having to deal

with Darwin." On the basis of that finding[1] we hold that the Board's decision on reconsideration is squarely in conflict with *Schlesinger v. United States,* 390 F.2d 702, 709, 182 Ct.Cl. 571 (1968).

The Board's finding that the contracting officer abused his discretion provides the legal predicate for converting the termination for default into one for the convenience of the Government. As the court pointed out in *Schlesinger,* the default article of the contract does not require the Government to terminate on a finding of default, but merely gives the procuring agency the discretion to do so, and that discretion must be reasonably exercised. *Id.* at 709, 182 Ct.Cl. 571. The facts of the case before us are almost identical to the salient facts in *Schlesinger,* where it was found that the contractor's status of technical default served only "as a useful pretext for taking the action found necessary on other grounds unrelated to the plaintiff's performance or to the propriety of the extension of time." *Id.* Because of the remarkable similarity in the facts, we quote the following from *Schlesinger:*

> As in *John A. Johnson Contracting Corp. [v. United States],* supra, the Navy used the termination article as a "device" and never made a "judgment as to the merits of the case". 132 F.Supp. [698] at 705, 132 Ct.Cl. [645] at 659–660 [1955]. Such abdication of responsibility we have always refused to sanction where there is administrative discretion under a contract. *New York Shipbuilding Corp. v. United States,* 385 F.2d 427, 435, 436–437, 180 Ct.Cl. 446, 460 (June 1967), and cases cited. This protective rule should have special application for a default-termination which has the drastic consequence of leaving the contractor

1. At oral argument, for the first time, the Government argued that this finding is not supported by substantial evidence. For two reasons, we do not consider this argument for any purpose in this case: First, the administrative record upon which the argument might have been based was available to the Government long before the filing of its brief. Therefore, it was far too late to raise the question at oral argument. Second, a party who challenges the correctness of the Board's findings of fact has the burden to specify in its brief the facts and circumstances in the Board's record which render the Board's decision lacking in substantial evidence. *Jefferson Construction Co. v. United States,* 368 F.2d 247, 252, 177 Ct.Cl. 581 (1966). Manifestly, the Government failed to meet this requirement.

without any further compensation. See *Acme Process Equip. Co. v. United States*, 347 F.2d 509, 527, 528, 171 Ct.Cl. 324, 355 (1965) rev'd on other grounds, 385 U.S. 138, 87 S.Ct. 350, 17 L.Ed.2d 249 (1966).

*Id.*

In a recent decision, *Quality Environment Systems v. United States*, 7 Cl.Ct. 428, 432 (1985), the Claims Court relied on the *Schlesinger* decision. The court held that if it was determined that a default decision represented an abuse of discretion, the contractual remedy would be to convert the termination into one for the convenience of the Government.

■ Accordingly, we hold as the court held in *Schlesinger* that the Board's decision on reconsideration must be reversed and the case remanded with instructions for the Board to reinstate its initial decision in which the default termination was converted into one for the convenience of the Government.

### III.

The Government has made only one argument as the basis for affirmance of the Board's decision. The Government asserts that since Darwin failed to demonstrate with "well-nigh irrefragable proof" that the Navy's default termination of the contract was exercised in bad faith, the termination was proper. In support of its contention, the Government cites *Kalvar Corp. v. United States*, 543 F.2d 1298, 1301–02, 211 Ct.Cl. 192 (1976), *cert. denied*, 434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 89 (1977), and *Knotts v. United States*, 121 F.Supp. 630, 636, 128 Ct.Cl. 489 (1954).

In view of the Board's unequivocal finding that the contracting officer's default decision was arbitrary and capricious, we reject the Government's argument on several grounds.

In the first place, the Contract Disputes Act of 1978 (CDA) expressly provides that an agency board "is authorized to grant any relief that would be available to a litigant asserting a contract claim in the United States Claims Court." 41 U.S.C. § 607(d). Furthermore, there is no doubt that in the exercise of its CDA jurisdiction under 28 U.S.C. § 1491, the Claims Court has held that it is authorized to set aside the decision of a contracting officer where it is established that his decision was arbitrary or capricious. *See, e.g., International Verbatim Reporters, Inc. v. United States*, 9 Cl.Ct. 710, 715 (1986); *Udis v. United States*, 7 Cl.Ct. 379, 387 (1985), and *Olympia USA, Inc. v. United States*, 6 Cl.Ct. 550, 554 (1984). The *Udis* case involved a contractor's appeal from the contracting officer's default decision. The court ruled that while the contracting officer had the discretionary authority to terminate the contract, "the exercise of that discretion must be fair and reasonable, not arbitrary or capricious." 7 Cl.Ct. at 387, citing *Everett Plywood Corp. v. United States*, 512 F.2d 1082, 1090, 206 Ct.Cl. 244 (1975).

We find nothing in *Kalvar* or *Knotts* which requires a different result. In *Kalvar*, the contractor alleged but failed to prove that the contracting officer had abused his discretion and had also acted in bad faith. In a footnote to that decision, the court stated:

> We need not decide whether bad faith is tantamount to abuse of discretion, since in our view plaintiff's claims indicate neither was present here. However, many of our prior decisions seem implicitly to accept the equivalence of bad faith, abuse of discretion, and gross error. *See Librach v. United States*, 147 Ct.Cl. 605, 614 (1959); *Levering & Garrigues Co. v. United States*, 71 Ct.Cl. 739 (1931); *see also* J. McBride and I. Wachtel, *Government Contracts* § 5.60[1] (1965).

543 F.2d 1298, 1301 n. 1.

*Knotts* was not a contract case. There the Court of Claims held that a Government employee had been unlawfully discharged as a result of malicious conduct by her superiors, who conspired to remove her in order to provide a job for a friend of one of the supervisors. However, the court in *Knotts* restated the scope of review which

had long been used by the Supreme Court and by the Court of Claims in Government contract cases:

In innumerable cases it has been held that where discretion is conferred on an administrative officer to render a decision, this decision must be honestly rendered, and that if it is arbitrary or capricious, or rendered in bad faith, the courts have power to review it and set it aside. This court has this question presented to it constantly in cases arising under Government contracts, where the contracting officer and the head of the department are given the power to render final decisions on questions of fact. Both this Court and the Supreme Court have many times held that if the decision is arbitrary or capricious or so grossly erroneous as to imply bad faith, it will be set aside. See, e.g. *Burchell v. Marsh*, 17 How. 344, 349, [15 L.Ed. 96], *Kihlbert v. United States*, 97 U.S. [Otto] 398 [24 L.Ed. 1106]; *United States v. Gleason*, 175 U.S. 588, 602 [20 S.Ct. 228, 233, 44 L.Ed. 284]; *Ripley v. United States*, 223 U.S. 695, 701 [32 S.Ct. 352, 355, 56 L.Ed. 614].

121 F.Supp. at 631, citing *Gadsden v. United States*, 78 F.Supp. 126, 127, 111 Ct.Cl. 487 (1948).

■ Thus, these decisions of the Court of Claims and the Claims Court make it abundantly clear that when a contractor persuades a court to find that the contracting officer's default decision was arbitrary or capricious, or that it represents an abuse of his discretion, the decision will be set aside. There is nothing in these decisions to support the Government's contention that the aggrieved contractor must add another layer of proof by demonstrating that the decision was also made in bad faith.

### IV.

Although neither party has referred to them, we find that the Armed Services Procurement Regulations (ASPR) in effect at the time the contract was terminated are pertinent here and lend further support to our decision. ASPR 18–618, entitled "Ter-

mination of Fixed-Price Construction Contracts for Default," 32 C.F.R., Parts 1 to 39, Volume III, revised as of July 1, 1983, provided as follows:

18–618.4 *Procedure in Case of Default.*

(a) The contracting officer shall consider the following factors in determining whether to terminate a contract for default:

(i) the provisions of the contract and applicable laws and regulations;

(ii) the specific failure of the contractor and excuses, if any, made by the contractor for such failure;

(iii) the period of time which would be required for the Government or another contractor to complete the work as compared to the time required for completion by the delinquent contractor;

(iv) the effect of a termination for default on the ability of the contractor to liquidate guaranteed loans, progress payments, or advance payments; and

(v) any other pertinent facts and circumstances.

It is clear from the findings made in the Board's initial decision that the contracting officer failed to comply with the provisions of 18–618.4(a)(iii), because the Board, in its initial decision, made the following findings of fact:

As for the material delay, the Board is convinced that by 19 December, the material delay had ceased; by 3 February, we are morally certain there was no shortage and by August 1984 the Board is persuaded that the Navy would concede that the contractor could have had all the material needed to complete this contract. Therefore, the Navy, knowing that renewed performance could only begin at the earliest in August 1984, had no basis for concluding that the delay causing Darwin's late performance in November would still be a viable cause of delay in August, nine months later.

84–3 BCA at 88,150.

This and other Board findings set forth in the BACKGROUND portion of this opin-

ion show that when the contract was terminated on February 13, 1984, the Navy knew that if another contractor were selected, it could not begin work until August of 1984 at the earliest, and that if Darwin had been allowed to do so, it could have completed the work in August 1984, at least as soon as and probably much sooner than a successor contractor could have performed the unfinished work.

## V.

As stated above, the Board in its reconsideration decision relied heavily on *Nuclear Research Associates, Inc.*, ASBCA No. 13563, 70–1 BCA ¶ 8237 (1970). The Board summarized the holding in that case as follows:

> [O]nce the right to termination is acquired by the Government and if that right is not lost by the Government because of its conduct, the Board will uphold the termination for default without any inquiry by the Board into the "motives" or judgment of the contracting officer leading to the decision to terminate.

*Darwin Constr. Co.*, ASBCA No. 29340, 86–2 BCA ¶ 18,959 at 95,733 (1986).

If we correctly understand the purport and effect of that decision, we cannot agree with it, because we think it is in conflict with the decisions of the Court of Claims, as well as the decisions of the Claims Court as discussed in Parts II and III above. Also, it is our opinion that it imposes an erroneous limitation on the statutory authority of boards of contract appeals to set aside default decisions of contracting officers in cases where the boards find that such decisions are arbitrary or capricious.

REVERSED AND REMANDED.