**Douglas R. EMBREY and Audric Smith, individually and d/b/a Smith–Embrey Company, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

No. 444–88C.

United States Claims Court.

July 17, 1989.

Ty H. Stites, Tulsa, Okl., for plaintiff.

Gordon D. Kromberg, Washington, D.C., with whom was Acting Asst. Atty. Gen. Stuart Schiffer, for defendant.

## OPINION

RADER, Judge.

On May 1, 1985, the Smith–Embrey Company (Smith–Embrey or plaintiff) entered into a two-year contract with the United States Department of Housing and Urban Development (HUD) to manage real estate near Tulsa, Oklahoma. On March 10, 1986, HUD terminated the contract for the convenience of the Government.

Pursuant to the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–13 (1982) (CDA), plaintiff challenged the convenience termination by submitting a claim to the HUD contracting officer. Plaintiff claimed no specific amount of money. Instead Smith–Embrey asserted a right to $34.00 per month, per property that plaintiff would have managed had the contract continued to completion. The contracting officer denied the claim on August 11, 1987.

The contracting officer terminated this contract for convenience of the Government after extensive consultations with superior HUD officials. HUD determined that business relations with plaintiff had deteriorated beyond repair and that plaintiff had failed to maintain contract performance standards. Plaintiff challenges those determinations as arbitrary and capricious or motivated by bad faith.

Plaintiff filed a complaint in the United States Claims Court for $600,000.00 on July 27, 1988. On October 26, 1988, defendant moved to dismiss for lack of subject matter jurisdiction or, in the alternative, for summary judgment. Plaintiff opposes defendant's motions. After briefing and oral argument, this court denies defendant's motion to dismiss, but grants defendant's motion for summary judgment.

## FACTS

In 1985, HUD awarded plaintiff a contract to serve as an area real estate management broker. The contract covered the area known as the Tulsa South region

of Oklahoma. The two-year contract began May 1, 1985. The contracting office terminated the contract for convenience of the Government on March 10, 1986.

Under this contract, plaintiff promised to provide real estate management services for properties the Government acquired through foreclosure. The contract required plaintiff to perform services such as inspecting, cleaning, and maintaining properties. HUD promised to pay plaintiff specific fees for these services. In addition, plaintiff received $34.00 per month, per property managed.

This requirements contract obligated plaintiff to provide services for an undetermined and varying number of properties for the two-year contract term. When the contract commenced, HUD estimated plaintiff would manage approximately 75 to 120 properties per month. However, due to slumping economic conditions, foreclosures in the Tulsa area exceeded expectations. In the last month of the contract, plaintiff had 225 properties under management.

Two weeks after the contract commenced, HUD issued plaintiff the first of several notices of unsatisfactory performance. HUD charged plaintiff with inadequate supervision of contractors, insufficient documentation of personal property left by previous owners, untimely filing of reports, under-staffing its office, non-payment of utilities and homeowner's association dues, and unauthorized winterization of 28 properties. Accordingly, the contracting officer advised plaintiff in August and again in October 1985 that HUD might terminate its contract.[1]

Plaintiff responded to these charges on February 15, 1986. In a letter to the contracting officer's supervisor, plaintiff complained about the contracting officer. Plaintiff described the contracting officer as an "arrogant jerk," "a bully," "a running sore of malcontent," an individual who "won't change, without the pain and suffering he apparently needs."

On February 27, 1986, the contracting officer requested the concurrence of his supervisor, Mr. Robert Falkenstein, to terminate the contract for convenience of the Government. The contract incorporated by reference the Federal Acquisition Regulation, which provides:

> The Contracting Officer, by written notice, may terminate this contract, in whole or in part, when it is in the Government's interest. If this contract is terminated, the Government shall be liable only for payment under the payment provisions of this contract for services rendered before the effective date of termination.

48 C.F.R. § 52.249–4 (1987). After receiving plaintiff's February 27 letter and the contracting officer's request to terminate the contract, the supervisor reviewed all activities and documents concerning plaintiff's performance. In an effort to resolve the problems, Mr. Falkenstein met separately with plaintiff and the contracting officer.

As a result of those meetings, Mr. Falkenstein determined that business relations between plaintiff and HUD were irreconcilable. He advised the contracting officer that he concurred in terminating the plaintiff's contract for convenience. By letter on March 4, 1986, the contracting officer terminated the contract effective March 10, 1986.

Plaintiff filed a claim with the contracting officer under the Contract Disputes Act on July 22, 1987. Plaintiff claimed no specific amount of money, but asserted a right to $34.00 per month, per property. This claim covered, in addition to properties managed prior to March 10, 1986, properties plaintiff would have managed for the balance of the contract term.

The contracting officer denied plaintiff's claim on August 11, 1987. The contracting officer applied 48 C.F.R. § 49.206–1 (1987), which requires a contractor to submit a settlement proposal within one year from the effective date of termination. Plaintiff

---

1. In an August 12, 1985 letter, HUD advised plaintiff of a 30–day period for review of its performance. During a personal interview with plaintiff on October 7, 1985, a HUD officer granted plaintiff another 60–day grace period to improve performance.

had not submitted its proposal within the deadline. Moreover, plaintiff had not requested an extension from the contracting officer.

On July 27, 1988, plaintiff instituted an action in the United States Claims Court seeking $600,000.00 in damages. Plaintiff amended its complaint on April 6, 1989, clarifying that the $600,000.00 was an approximate sum, which amount may prove lesser or greater at time of trial.

Plaintiff contends the contracting officer's actions were arbitrary, capricious, and taken in bad faith. Further, plaintiff contends the dismissal resulted from plaintiffs' exposure of wrong-doing and refusal to participate in illegal activity. Specifically, plaintiff alleges the contracting officer asked it to falsify Government forms, reports, inspections, and vouchers. Further, plaintiff contends HUD requested plaintiff to file false, unsatisfactory performance reports against subcontractors.[2]

With respect to the inflated estimate of damages,[3] plaintiff states that it did not have access to information concerning potential management obligations after the contract termination date. In a letter to HUD dated July 22, 1987, plaintiff requested an accurate accounting of the number of properties owned or acquired by HUD during the balance of the contract. Defendant has not responded.

Defendant asks this court to dismiss the case for lack of subject matter jurisdiction or, in the alternative, to grant its motion for summary judgment. In support of the motion to dismiss, defendant contends the $600,000.00 claim for which plaintiff seeks recovery is not the same claim that was presented to the contracting officer. Plaintiff's claim to the contracting officer demanded no specific amount of money.

Defendant also contends that plaintiff's claim is jurisdictionally barred. Claims in excess of $50,000.00 are required under 41 U.S.C. § 605(c)(1), to be certified before the claim is submitted to the contracting officer. To be properly certified, the amount claimed must accurately reflect the amount for which the contractor believes the Government is liable. In the alternative, defendant requests summary judgment under RUSCC 56 on the grounds that no material fact remains in controversy.

This court must decide several questions in order to resolve defendant's motion. First, this court must decide whether this claim is the same claim submitted to the contracting officer. Second, this court must decide whether the claim submitted to the contracting officer was properly certified. Finally, this court must rule on defendant's motion for summary judgment.

## DISCUSSION

### Subject Matter Jurisdiction

This case arises under the Contract Disputes Act which states: "All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a). Denial of a properly certified claim by the contracting officer is a jurisdictional prerequisite for filing an action in the Claims Court. *Paul E. Lehman, Inc. v. United States*, 230 Ct.Cl. 11, 16, 673 F.2d 352, 355 (1982).

The CDA contains the following certification requirement:

For claims of more than $50,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

---

2. These allegations appeared for the first time before the United States Claims Court. Plaintiff made no such representations to any HUD officer at the time. Plaintiff's affidavit of March 31, 1989 is the first explanation given of plaintiff's allegations of bad faith. At oral argument, this court requested plaintiff to supply specific dates, times, and incidents of illegal conduct by HUD's contracting officer. To date plaintiff has not done so. Transcript of Proceedings, No. 444–88C, filed May 17, 1989, at 86–89 (Tr.).

3. Plaintiff's attorney admitted "damages were overestimated in the complaint." Tr. at 46.

41 U.S.C. § 605(c)(1). To properly certify a claim, a contractor must simultaneously make all of the assertions required by the Contract Disputes Act. *W.H. Moseley Co. v. United States*, 230 Ct.Cl. 405, 407, 677 F.2d 850, 852, *cert. denied*, 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982); *Aeronetics Div., AAR Brooks & Perkins Corp. v. United States*, 12 Cl.Ct. 132, 135 (1987). The certification requirement encourages fair and equitable settlement of claims and discourages the unwarranted submission of undocumented or inflated contractor claims. *Metric Constr. Co. v. United States*, 1 Cl.Ct. 383, 389 (1983).

▮ To fulfill this purpose, the certification requirement does not demand a full-blown evidentiary presentation. *Id.* at 391. To satisfy the certification requirement, a contractor need only supply enough supporting information to allow the contracting officer to make a meaningful determination. *Metric*, 1 Cl.Ct. at 391.

▮ In the case at bar, defendant maintains the claim before this court is not the same claim presented to the contracting officer. Before the contracting officer plaintiff claimed no specific amount of money. Rather, plaintiff asserted a right to $34.00 per month, per property that plaintiff would have managed through the entire duration of the two-year contract. Because uncertain of the number of properties under management in the Tulsa South area after termination of the contract, plaintiff did not claim a specific amount.

Plaintiff bases its action before the Claims Court upon the same contract and controversy submitted to the contracting officer. Both claims contend termination by the Government was arbitrary, capricious, wrongful, and retaliatory. Before the Claims Court, however, plaintiff roughly estimated the number of properties it might have managed in the remaining 14 months of the contract. After making the computation involving $34.00 per month, plaintiff requested $600,000.00 in damages.

Defendant contends that $600,000.00 far exceeds any fees potentially due under the duration of the requirements contract. At the time of contract termination, plaintiff had 225 properties under management. Applying the $34.00 formula to this figure, defendant computes damages of $57,120.00. Even doubling the properties under management, defendant argues, would not yield a respectable fraction of the $600,000.00 claim. Therefore, defendant contends, the Claims Court suit must be different from the claim submitted to the contracting officer.

If the termination was wrongful, plaintiff's damages would include anticipatory profits for the remaining 14 months of the contract. Considerable uncertainty about the number of properties managed during the remaining 14 months of the contract influenced plaintiff's inflated computation. Due to economic hardships, foreclosures continued to grow dramatically after termination. Only HUD's records would disclose the exact number of properties that plaintiff would have managed. Due to the uncertainties in this case, plaintiff is not obligated to accurately estimate amounts within the possession of, and readily available to, defendant. Plaintiff must, however, supply enough information to allow defendant to make a meaningful determination. Plaintiff did this.

Moreover, plaintiff clarified that the inflated damage claims in its complaint were approximations. Plaintiff's complaint requested "Six Hundred Thousand Dollars ($600,000.00), which amount may prove lesser or greater at time of trial." Thus, defendant was on notice that plaintiff's damage claims were estimations.

Therefore, plaintiff does not lose jurisdiction on the basis of failure to certify, when the underlying information necessary to certify with precision is solely in the possession of the contracting officer. The contracting officer had access to all the information necessary to compute precisely the damages which plaintiff roughly estimated.

In *Metric*, 1 Cl.Ct. at 392, the Claims Court refused to deny jurisdiction based on failure to certify when the contracting officer could easily compute the amount of the claim. In the case at bar, HUD's contracting officer had access to the actual number of properties serviced during the remaining

14 months of the contract. Although not obligated to furnish those figures at the preliminary stages of this action, defendant may not complain that plaintiff failed to estimate accurately information known only to HUD. In sum, the purposes of both certification under CDA and pleading under RUSCC 6 are satisfied when the contracting officer and defendant have, in fact, full access to information necessary to make a meaningful determination.

The case dismissed by the contracting officer and the case before this court are the same claim. This court denies this portion of defendant's motion to dismiss.

■ Defendant also contends that plaintiff did not properly certify its claim. The CDA requires plaintiff to certify that its damage claim accurately reflects the amount for which the contractor believes the Government is liable. 41 U.S.C. § 605(c)(1).

In its claim to the contracting officer, plaintiff certified:

(1) the claim was asserted in good faith,

(2) all statements contained in the claim were true and correct, including those which would allow the government to properly calculate the exact amount ofthe claim, and

(3) that the exact amount claimed to be due under the contract was unknown but that plaintiffs believed the amount could be calculated by the Government and exceeded $50,000.

Believing in good faith that the amount due under the contract exceeded $50,-000.00, plaintiff certified the claim pursuant to the Contract Disputes Act. The Claims Court considers certification proper if supporting information included in the claim allows the contracting officer to make a meaningful determination of the disputed amount. *Metric*, 1 Cl.Ct. at 391–92.

In this instance, plaintiff adequately clarified the nature of its claim. The contracting officer had at his disposal the information necessary to compute the precise amount of the claim. Moreover, plaintiff certified in good faith that the extent of Government liability would most likely exceed $50,000.00 The CDA requires no more of plaintiff in order to acquire jurisdiction in the Claims Court.

If this court granted defendant's motion to dismiss, plaintiff would have had to re-submit the claim to the contracting officer. Plaintiff would have no more information than it now has. The number of properties serviced during the remaining 14 months of the contract remains solely with HUD. Plaintiff would have no way to formulate a more specific claim. Thus defendant's motion, if granted, could deprive plaintiff of any appeal from the contracting officer's final decision.

Congress did not intend the procedures of the CDA to foreclose but rather to facilitate review of contract disputes. The Congressional committee reports do not discuss the certification requirement. The requirement was added to the bill on the floor of the Senate on October 12, 1978, the day the Senate passed the legislation. The amendment's sponsor, Senator Robert Byrd, explained that Admiral Rickover suggested the certification requirement on June 14, 1978, at a hearing on the bill. *Paul E. Lehman*, 673 F.2d at 354–55. Testimony at the Joint Hearings reflects that the intent of the certification requirement was to discourage the submission of unwarranted contractor claims.[4]

In this case, plaintiff endeavored in good faith to certify its claim. Plaintiff could not, however, provide specific details about the extent of the Government's liability because the Government retained the information necessary to ascertain those details.

Plaintiff properly certified its claim and satisfied the purpose of the certification requirement. Therefore, this court has jurisdiction over this action. This court denies

---

**4.** 124 Cong.Rec. 36267 (1978). Contract Disputes Act of 1978: Joint Hearings on S. 2292, S. 2787 & S. 3178 Before the Subcomm. on Federal Spending Practices and Open Government of the Senate Comm. on Governmental Affairs and the Subcomm. on Citizens and Shareholders Rights and Remedies of the Senate Comm. on the Judiciary, 95th Cong., 2d Sess. 21 (1978).

defendant's motion to dismiss for lack of proper certification.

### Summary Judgment Standards

RUSCC 56(c) provides that summary judgment shall be rendered forthwith if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Thus, a trial court may streamline the judicial process by isolating and disposing of factually unsupported claims or defenses.

Two recent Supreme Court cases: *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and *Adickes v. Kress*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), set the standards for summary judgment proceedings. These cases establish the burden to be borne by the movant and by the opponent of a summary judgment motion. *Adickes* governs the movant's obligations under the summary judgment rule. A movant for summary judgment has the "burden of showing the absence of a genuine issue as to any material fact...." *Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608.

*Celotex* clarifies that *Adickes* does not require the movant to prove the absence of a factual dispute with respect to the issue on which the non-moving party bears the burden of proof. In such a case, the movant discharges its burden by showing an absence of evidence to support the non-moving party's case.

■ *Celotex* obliges a party to "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof ... at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. Thus, a failure of proof concerning an essential element of the non-moving party's case entitles the moving party to a legal judgment. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

*United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), requires this court to resolve doubts "in the light most favorable to the party opposing the motion." When evaluating the merits of the motions, the court must resolve reasonable, factual disputes against the movant. *Schwabenbauer v. Board of Educ.*, 667 F.2d 305, 313–14 (2d Cir.1981). Mere denials or conclusory statements, however, are not sufficient to create an evidentiary conflict. *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 836 (Fed.Cir.1984).

■ A material fact is one which will make a difference in the result of a case. *Curtis v. United States*, 144 Ct.Cl. 194, 199, 168 F.Supp. 213, 216 (1958), *cert. denied*, 361 U.S. 843, 80 S.Ct. 94, 4 L.Ed.2d 81 (1959). Substantive law provides the basis to identify the material facts. Only disputes over facts that might affect the outcome of the suit will properly prevent an entry of judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### Validity of Convenience Termination

■ Plaintiff claims entitlement to the profit that it would have made during the remainder of the contract. Plaintiff may receive anticipatory profits only if Government officials wrongfully terminated the contract. Defendant moves for summary judgment asserting that HUD justifiably terminated plaintiff's contract for convenience of the Government. At issue is whether the defendant's decision to terminate the contract for the convenience of the Government was arbitrary, capricious, or retaliatory.

■ "[T]he Government may not use the standard termination for convenience clause to dishonor, with impunity, its contractual obligations." *Torncello v. United States*, 231 Ct.Cl. 20, 47, 681 F.2d 756, 772 (1982). The Government may only use the convenience termination clause where the circumstances of the bargain or the expectations of the parties have changed. *Id.*

■ In this case, the circumstances of the bargain and the expectations of the parties changed between contract award and March 10, 1986. This change was evident in the deterioration in business relationships between plaintiff and HUD.

HUD repeatedly complained of plaintiff's performance failures and plaintiff resorted to using disparaging epithets to refer to the contracting officer. At length, a HUD supervisor intervened to assess the situation. Despite Mr. Falkenstein's efforts, the working relationship was beyond salvage. Mr. Falkenstein approved the convenience termination.

Unsatisfactory performance by the contractor is further evidence of a change in the bargain and expectations of the parties. The Claims Court's predecessor established that refusal by a contractor to meet contract requirements justifies a termination for convenience. *Torncello,* 681 F.2d at 760; *Nesbitt v. United States,* 170 Ct.Cl. 666, 670 n. 3, 345 F.2d 583, 586 n. 3 (1965), *cert. denied,* 383 U.S. 926, 86 S.Ct. 931, 15 L.Ed.2d 846 (1966)). In *Nesbitt,* the Court of Claims stated:

> The defendant was concerned about the backlog of its unfilled needs ... and had discussed with plaintiff its demand for much greater production. Plaintiffs ... refused to increase his minimum production as much as defendant asked. ... In these circumstances, the contracting officer would undoubtedly have had the power, under the termination article, to exercise the Government's right to terminate the plaintiff's full rights, in order to be free to place orders with other suppliers.

*Nesbitt,* 170 Ct.Cl. at 670 n. 3, 345 F.2d 586 n. 3 (citations omitted).

In this action, affidavits and letters document that HUD issued plaintiff numerous notices of unsatisfactory performance. HUD advised plaintiff by letter on August 12, 1985, of a 30-day period established to review performance. The letter detailed plaintiff's substandard performance.[5] When plaintiff's performance did not improve, HUD called in plaintiff for further consultations.

Again, on October 7, 1985, the contracting officer met with plaintiff to discuss deficient performance. That meeting granted plaintiff an additional 60 days to improve performance. Plaintiff was on notice of the need to hire more workers, process required paperwork faster, and provide management services on time. Still plaintiff's performance did not rise to meet HUD standards.

On March 3, 1986, the contracting officer issued a memo containing more complaints. Specifically, the contracting officer mentioned unpaid utility bills and homeowner association fees which delayed the sale of properties. Further, the memo referred to plaintiff's unauthorized winterization of 28 properties.

The unrefuted record in this case shows that plaintiff failed to perform its contract obligations in a fully satisfactory manner. Therefore plaintiff's performance, or lack of it, provided ample justification for a termination for convenience.

Plaintiff, however, argues that personality conflicts, not performance insufficiencies, motivated the termination. Therefore, plaintiff contends that the convenience termination was arbitrary, capricious, and retaliatory. In addition, plaintiff alleges that the contracting officer's actions amounted to bad faith sufficient to invalidate the convenience termination. Giving appropriate deference to these arguments under summary judgment procedures, this court nonetheless determines that defendant prevails as a matter of law.

The Court of Claims set forth the principles governing allegations of arbitrary and capricious conduct:

> (1) Subjective bad faith on the part of the procuring officials, depriving a bidder of the fair and honest consideration of his proposal.
>
> (2) Proof that there was no reasonable basis for the decision.
>
> (3) The degree of proof of error is ordinarily related to the amount of discretion entrusted to the procurement officer.

---

5. Among HUD's complaints about plaintiff's performance were: (1) Insufficient documentation of personal property left by previous owners, (2) inadequate supervision of contractors, (3) untimely maintenance of properties, and (4) failure to act in a business and professional manner. Defendant's brief, filed Oct. 26, 1988, App., at 5–6.

(4) Proven violation of pertinent statutes or regulations.

*Keco Indus. Inc. v. United States,* 203 Ct.Cl. 566, 574, 492 F.2d 1200, 1203–04 (1974).

■ Plaintiff has the burden of proving arbitrary and capricious conduct by HUD. Thus, plaintiff must assert more than "naked allegation[s] of arbitrary and capricious action" in order to obtain a trial. *Keco Indus.,* 203 Ct.Cl. at 581, 492 F.2d at 1208; *Greenway v. United States,* 163 Ct.Cl. 72, 82 (1963).

■ Although plaintiff charges that HUD acted arbitrarily and capriciously, the record shows that HUD officials acted reasonably under the circumstances. By early 1986, the business relationship between the parties was ruined. Plaintiff and HUD were barely communicating, let alone cooperating. Mr. Falkenstein intervened responsibly and determined that the relationship was beyond repair. Further, Mr. Falkenstein determined that plaintiff's performance did not meet HUD standards. Despite repeated consultations, plaintiff's conduct did not meet contract standards. Therefore, after careful and thorough consideration, Mr. Falkenstein consented to the termination.

The United States Court of Appeals for the Federal Circuit recently decided a case—*Darwin Construction Co. v. United States,* 811 F.2d 593 (Fed.Cir.1987)—which suggests this termination was reasonable and appropriate. The *Darwin* case is analogous in many respects to the case at bar. Citing inadequate performance by the contractor, the contracting officer terminated the *Darwin* contract for default. In fact, the contracting officer terminated the contract for default because the Navy no longer wished to deal with this particular contractor. *Id.* at 594–95. Therefore, the Federal Circuit ruled that the contracting officer's decision to terminate the contract for default was arbitrary and capricious. Hence, the Federal Circuit reinstated an Armed Services Board of Contract Appeals decision and converted the default termination into a convenience termination. *Id.*

Like the case at bar, *Darwin* involved both allegations of inadequate contractor performance and incompatibility between a contractor and the Government. Under those changed circumstances, the Federal Circuit reinstated the Board's initial decision terminating the contract for convenience. Thus, *Darwin* suggests that HUD selected the proper remedy in this case. HUD terminated this contract for convenience in the first place.

■ Unlike the Navy in *Darwin,* however, HUD treated plaintiff fairly and reasonably. This case features unrebutted evidence of inadequate performance by the contractor. HUD has authority to terminate contracts for the convenience of the Government in order to obtain more competent real estate managers. *Nesbitt,* 170 Ct.Cl. at 670, 345 F.2d at 586. Still unlike the Navy in *Darwin,* the contracting officer and his supervisor gave plaintiff several opportunities to cure its performance shortfalls. HUD did not act precipitously, but carefully. Thus, under *Darwin's* standards, the decision to terminate this HUD contract for convenience was appropriate and reasonable. *Darwin,* 811 F.2d at 597. The two justifications for termination—ruined business relations and inadequate performance—adequately support the decision. Defendant did not act arbitrarily or capriciously.

■ Plaintiff also charges bad faith by HUD. Plaintiff must present specific evidence of intent to retaliate against or injure plaintiff to support an allegation of bad faith. *American Gen. Leasing v. United States,* 218 Ct.Cl. 367, 374–75, 587 F.2d 54, 59 (1979); *Kalvor Corp., Inc. v. United States,* 211 Ct.Cl. 192, 199, 543 F.2d 1298, 1302 (1976); *Librach v. United States,* 147 Ct.Cl. 605, 612–14 (1959).

Public officials, in the absence of clear evidence to the contrary, presumably act conscientiously in the discharge of their duties. *Contract Custom Drapery Serv. v. United States,* 6 Cl.Ct. 811, 817 (1984). Plaintiff must present well-nigh irrefragable proof of bad faith before this court may abandon the presumption of good faith dealing by public officials. *Union Pac.*

*R.R. Co. v. United States,* 847 F.2d 1567, 1571 (1988); *Sanders v. United States,* 801 F.2d 1328, 1331 (1986); *American Gen. Leasing,* 218 Ct.Cl. at 374.

Plaintiff presents three unsupported allegations of bad faith. First, subsequent to the termination of the contract, the contracting officer filed a complaint with the Oklahoma Real Estate Commission. The complaint alleged plaintiff failed to account for security deposits and rental documents to HUD. Second, plaintiff contends termination was in retaliation for plaintiff's refusal to falsify Government forms, reports, inspections, vouchers, and other requests for payment by the Government. Finally, plaintiff contends, termination was in retaliation for plaintiff's refusal to participate in filing false unsatisfactory performance reports against sub-contractors.

██ The first allegation [6] regarding the contracting officer's complaint to the Oklahoma Board of Realtors is not relevant. The contracting officer complained to the state board after contract termination. Thus, this action did not influence the decision to terminate the contract. This occurrence is, to a limited degree, further indication of distrust between the parties. Both the contracting officer and plaintiff, without apparent substantiation in this record, accuse the other of illegal conduct.

██ With regard to the second and final allegations, plaintiff makes bold accusations without sufficient evidentiary corroboration. The Federal Circuit stated:

> The party opposing the motion must point to an evidentiary conflict created on the record at least by a counter statement of a fact or facts *set forth in detail* in an affidavit by a knowledgeable affiant.

*Barmag Barmer,* 731 F.2d at 836 (emphasis added). Plaintiff does not supply dates or any details about the alleged illegal activity plaintiff refused to perform. Plaintiff merely states allegations. Moreover, these allegations appear for the first time years after their alleged occurrence.

Plaintiff alleged bad faith for the first time in this action two years after contract termination. Plaintiff had the opportunity to inform HUD's area supervisor of any improper or illegal actions at the time of its alleged occurrence. Plaintiff wrote to the area supervisor on February 27, 1986. In this letter plaintiff called the contracting officer an "arrogant jerk" and more. Yet this frank and bitter letter made no mention of illegal activities. In a letter which "pulled no punches," plaintiff would have likely included allegations of illegality. Plaintiff did not make any charges of illegality at that time.

After receiving plaintiff's letter, the area supervisor received the contracting officer's request to terminate plaintiff's contract. After reviewing all activities and documents concerning plaintiff's contract, Mr. Falkenstein met separately with plaintiff. At that time, plaintiff again had ample opportunities to raise allegations of illegal conduct. Mr. Falkenstein heard no such allegations. This failure to report illegal activity at the time of its occurrence, particularly when the opportunity to do so repeatedly arose, calls into question the credibility of plaintiff's current accusations. Yet plaintiff presents no specific evidence to overcome these credibility questions.

In order to show bad faith, plaintiff must present well-nigh irrefragable proof of HUD's intent to injure Smith–Embrey. This high standard also suggests that plaintiff must make more than sparse allegations at the summary judgment stage. Plaintiff's failure to provide more than naked allegations reinforces that HUD's actions prior to the termination do not indicate intent to injure Smith–Embrey. Plaintiff's allegations of bad faith simply lack substantiation.

## CONCLUSION

Plaintiff fails in its opposition to defendant's summary judgment motion. Plaintiff does not show that it possesses well-nigh irrefragable proof of bad faith.

---

**6.** Plaintiff first made this allegation in an affidavit from Mr. Embrey, filed April 6, 1989, months after completion of briefing on defendant's motions.

HUD had good reason to take the correct step of terminating the contract for convenience. Deteriorating relationships between the parties changed the bargain. Unsatisfactory performance by plaintiff also changed the bargain. HUD's area supervisor and contracting officer, therefore, had a reasonable basis to terminate the contract. The termination action was not a vendetta by a single maverick Government official. The area supervisor approved the decision to terminate.

This court cannot abandon the presumption of good faith dealing by public officials. In the absence of clear evidence to the contrary, it must be presumed that the contracting officer and his supervisor acted conscientiously in the discharge of their duties. *United States v. Chemical Found.*, 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926). Plaintiff must do more than make bold allegations to obtain a trial.

This court finds that plaintiff has not made a sufficient showing of bad faith, or abuse of discretion, to raise a triable issue. Defendant is entitled to judgment as a matter of law. Accordingly, this court grants defendant's motion for summary judgment and the Clerk is instructed to enter judgment dismissing plaintiff's complaint.

No costs.