

1995 Decisions

2-13-1995

# Linan v Housing Auth. /Camden

Precedential or Non-Precedential:

Docket 94-5193

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Linan v Housing Auth. /Camden" (1995). *1995 Decisions*. Paper 45.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/45

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-5193


LINAN-FAYE CONSTRUCTION CO., INC.

<u>Appellant</u>

v.

HOUSING AUTHORITY OF THE CITY OF CAMDEN


Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 90-cv-04651)


Argued: September 23, 1994
BEFORE: BECKER, COWEN and GARTH,
<u>Circuit</u> <u>Judges</u>

(Filed February 13, 1995)

Cary L. Flitter (argued)
Lundy, Flitter & Beldecos
450 North Narberth Avenue
P.O. Box 278
Narberth, PA 19072-0278

        Counsel for Appellant
        Linan-Faye Construction Co., Inc.

Mark D. Caswell (argued)
Freeman, Zeller & Bryant
Ten Melrose Avenue
Woodcrest Pavilion, Suite  400
Cherry Hill, NJ 08003-3647

        Counsel for Appellee
        Housing Authority of the
        City of Camden

OPINION

COWEN, <u>Circuit</u> <u>Judge</u>.

Linan-Faye Construction Company Co., Inc. ("Linan-Faye"), a public housing contractor, appeals from orders of the district court that granted summary judgment for the Housing Authority of the City of Camden ("HACC") on Linan-Faye's claims under public contract law and 42 U.S.C. § 1983. Because the district court erred in applying federal common law rather than state law to resolve this dispute, we will reverse and remand to the district court for further proceedings. Nevertheless, since we conclude that in the absence of New Jersey law which specifically interprets "termination for convenience" clauses New Jersey courts would look to federal common law for guidance, we will limit the triable issues on remand to a determination of: (1) the definition of "work performed" for purposes of paragraph 17 of Linan-Faye's contract with HACC; (2) the pre-termination expenses incurred by Linan-Faye that may be compensable as "work performed" under paragraph 17 of the contract; and (3) HACC's liability, if any, for damages resulting from HACC's withholding of Linan-Faye's performance bond after termination. Finally, because the district court did not err in determining that Linan-Faye failed to demonstrate a protectible property or liberty interest sufficient to support its § 1983 claim, we will affirm the district court's grant of summary judgment on this claim.

I. FACTS & PROCEDURAL HISTORY

On August 11, 1988, HACC advertised for bids on a housing modernization project. The project involved the renovation and rehabilitation of 244 housing units and was to be funded in substantial part by a grant from the United States Department of Housing and Urban Development pursuant to the Public and Indian Housing Comprehensive Improvement Assistance Program ("CIAP"). Plaintiff, Linan-Faye, attended all required pre-bid meetings and submitted a bid of $4,264,000, together with supporting documentation which included a bid bond, performance bond, qualification statement, and required affidavits. Linan-Faye was the lowest responsible bidder for the job, underbidding its nearest competitor by $600,000. Accordingly, HACC informed Linan-Faye that the contract was to be forthcoming.

Linan-Faye engaged in preparatory activities in connection with the contract, including meeting with prospective subcontractors, job planning and pricing, talking with relevant inspectors, and securing insurance. Also, on several occasions, representatives of Linan-Faye met with HACC and its architect to discuss specifications and make preparations for the commencement of physical construction. Linan-Faye, however, never began physical construction because numerous disputes broke out between the parties over interpretation of the specifications.

Linan-Faye contends that HACC demanded concessions before permitting work to begin. HACC maintains that the parties

arrived at different interpretations of the project plans and specifications, and this conflict became evident at pre-construction meetings. On November 29, 1988, as the result of these disputes, HACC advised Linan-Faye that it was going to rebid the project. Linan-Faye filed suit to enjoin this rebidding and allow it to complete the project as bid.

The district court entered a temporary restraining order to prevent HACC from accepting further bids. Subsequently, the court approved a Stipulation of Settlement and Order of Dismissal with Prejudice, under which the parties agreed to execute the contract and proceed with the project as originally planned. Nevertheless, disputes soon broke out again.

On November 22, 1989, HACC issued a Notice to Proceed. Linan-Faye contends that the notice was limited to an order to correct certain plumbing problems that were a portion of the original contract. Linan-Faye refused to proceed in a piecemeal fashion, and insisted that it would not begin work until a certain number of vacant buildings were available at the same time so that it could achieve economies of scale. HACC responded that it had scattered vacant units available, but not rows of units.

Subsequently, HACC attempted first to extract the plumbing segment from the contract and, when that failed, proposed a complete buy-out of Linan-Faye's contract. The parties entertained the possibility of a buy-out until July of

1990, at which time HUD informed HACC that it would not approve a buy-out.  HACC reinstated the previous Notice to Proceed by letter dated July 23, 1990.

At a preconstruction meeting on September 6, 1990, Linan-Faye informed HACC that it would not start work until the contract price was increased to reflect the costs incurred by the delay in commencing construction.  HACC responded that Linan-Faye had to begin work before it would address the issue of the price increase.

HACC elected to terminate Linan-Faye's contract by letter dated September 25, 1990.  In that letter, Gregory Kern, the Interim Executive Director of HACC, stated that HACC would instruct the Modernization Office to assist Linan-Faye in reclaiming its performance bonds.  While the letter did not mention the terms "breach" or "default," it did state that Linan-Faye "had continually failed to demonstrate its intent to perform under the public contract."  Letter from Kern to Norman Faye (September 25, 1990); App. Vol. I at 114-115.  HACC confirmed its decision to terminate by letter dated October 23, 1990.

Linan-Faye objected to the termination and filed the instant action on October 26, 1990, setting forth theories of recovery under New Jersey public contracts law and 42 U.S.C. § 1983.  Linan-Faye served HACC with a complaint in December of 1990 seeking specific performance and damages.  HACC did not surrender Linan-Faye's performance bond until July of 1991, after the

district court determined that specific performance was not available to Linan-Faye.

In April of 1992, HACC filed a motion for summary judgment on Linan-Faye's civil rights claim and for the first time argued, in that same motion, that the "termination for convenience" clause set forth in paragraph 17 of the General Conditions of their contract limited Linan-Faye's damages under the contract.[1]  The district court granted HACC's motion for

_____

[1].  Paragraph 17 of this contract's General Conditions of the Contract for Construction states in relevant part:

  a.   Subject to the approval of HUD, the performance of work under this contract may be terminated by the PHA in accordance with this paragraph in whole, or from time to time in part, whenever the Contracting Officer shall determine that such termination is in the best interest of the PHA.  Any such termination shall be effected by delivery to the Contractor of a Notice of Termination specifying the extent to which the performance of the work under the contract is terminated, and the date upon which such termination becomes effective.

  b.   If the performance of the work is terminated, either in whole or in part, the PHA shall be liable to the Contractor for reasonable and proper costs resulting from such termination, which costs shall be paid to the Contractor within 90 days of receipt by the PHA of a properly presented claim setting out in detail: (1) the total cost of the work performed to date of termination less the total amount of contract payments made to the contractor . . .; and (5) an amount constituting a reasonable profit on the value of work performed by the Contractor.

App. Vol. II at 45.

summary judgment on the § 1983 claim, but deferred decision on the effect of the termination of convenience clause pending further discovery.

Upon a renewed motion for summary judgment, the district court held for HACC, determining that Linan-Faye's damages would be limited to those compensable under the contract's termination for convenience clause. The district court left open, however, the possibility of recovery for damages accruing from HACC's initial failure to identify specifically the termination as one of convenience.

HACC filed its third motion for summary judgment on October 27, 1993. In that motion, HACC contended that since Linan-Faye never began work under the contract, it could not recover any damages under the termination for convenience clause. Linan-Faye responded that it could recover damages for: (1) preparatory costs such as soliciting subcontractors, pricing, and pre-construction meetings; (2) improper notice of termination; (3) pre-termination delay by HACC; and (4) HACC's refusal to relinquish Linan-Faye's performance bond. Determining that federal common law applied in interpreting this contract, the district court held that Linan-Faye incurred no compensable damages under the termination for convenience clause. The court, therefore, entered an order granting summary judgment for HACC. This appeal followed.

Following oral argument before this Court, HACC and Linan-Faye agreed to participate in non-binding mediation of the controversy before the Honorable Max Rosenn, Senior Circuit Judge. By memorandum dated November 9, 1994, Judge Rosenn informed us that efforts to reach a settlement of the controversy through mediation were unsuccessful.

## II. JURISDICTION & OVERVIEW OF ISSUES RAISED IN THIS APPEAL

The district court exercised jurisdiction in this matter by virtue of the diversity of citizenship of the parties with the requisite amount in controversy pursuant to 28 U.S.C. § 1332 (1988). This Court has jurisdiction pursuant to 28 U.S.C. § 1291 (1988). Linan-Faye essentially raises six issues on appeal:[2] (1) whether the district court erred in applying federal common law and not the law of New Jersey to interpret this contract; (2) whether New Jersey law precludes retroactive application of a termination for convenience clause; (3) whether the district court was correct in its application of the constructive termination for convenience doctrine; (4) whether the district court erred by engaging in impermissible fact

---

[2]. Linan-Faye styles its appeal as containing seven issues. Brief of Appellant at ix-x. The first of these issues, according to Linan-Faye, is that the district court engaged in impermissible fact finding on contested matters. Given our conclusion concerning the application of the termination for convenience clause, however, this issue is best resolved in conjunction with a discussion of the proper application of that clause. See discussion infra part VI.

finding so as to deny Linan-Faye all compensation; (5) whether Linan-Faye has an actionable claim for violation of its civil rights; and (6) whether HACC's position that the termination for convenience clause denies any recovery is barred by principles of equitable and judicial estoppel.

## III. CHOICE OF LAW

Linan-Faye contends that the district court erred in applying federal common law and not the law of New Jersey to resolve this dispute.  According to Linan-Faye, this action involves a contract dispute between a private contractor and an autonomous public housing authority created pursuant to New Jersey law.  Where such parties enter federal court based upon diversity of citizenship, Linan-Faye argues, the federal courts presumptively apply state law.  See Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817, 822 (1938).  We agree.

Our review of a district court's determination as to choice of law is plenary.  Louis W. Epstein Family Partnership v. Kmart Corp., 13 F.3d 762, 766 (3d Cir. 1994) (citing Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102 (3d Cir. 1981)).  This Court's recent decision in Virgin Islands Housing Authority v. Coastal General Construction Services Corp., 27 F.3d 911 (3d Cir. 1994), strongly indicates the proper result in this case.  In Coastal General, we determined, in the context of deciding a question of federal jurisdiction, that local law, not

federal law, governs a dispute over the termination provisions of a contract between a public housing authority and a private construction company. Id. at 917. As we stated in Coastal General, "[t]he fact that a contract is subject to federal regulation does not, in itself, demonstrate that Congress meant that all aspects of its performance or nonperformance are to be governed by federal law rather than state law applicable to similar contracts in businesses not under federal regulation." Id. at 916 (quoting Lindy v. Lynn, 501 F.2d 1367, 1369 (3d Cir. 1974)). In addition, we explained that even if the contractor's complaint contained assertions respecting the use of federal funds in a construction project and the adoption of contractual forms authorized by HUD, there would be no difference in outcome. Id. at 917.

Similar to Coastal General, in the instant case a public housing authority contracted with a private construction company. Linan–Faye, the construction company, did not contract directly with the United States government. While HUD funded the construction project in part, and HUD forms were used in the contract, Coastal General teaches that these facts do not dictate application of federal common law. Rather, the holding of Coastal General indicates that in construing termination clauses such as the one at issue in this case, courts must look to local law. Thus, the district court was incorrect in applying federal common law and not the law of New Jersey to resolve this dispute.

The district court erred in deviating from the generally applicable Erie doctrine.  The Supreme Court, in Boyle v. United Technologies Corp., 487 U.S. 500, 108 S. Ct. 2510 (1988), set forth a two-pronged inquiry for determining whether to apply federal common law in the absence of an express Congressional grant of such authority.  According to the Supreme Court, a court must first determine whether the action involves "`uniquely federal interests.'"  Id. at 504, 108 S. Ct. at 2514 (citing Texas Industries Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 640, 101 S. Ct. 2061, 2067 (1981)).  Once a court identifies a uniquely federal interest, the court must then determine whether a "significant conflict" exists between an identifiable "federal policy or interest and the [operation] of state law."  Id. at 507, 108 S. Ct. at 2516 (quoting Wallis v. Pan American Petroleum Corp., 384 U.S. 63, 68, 86 S. Ct. 1301, 1304 (1966)).

Relying on American Pipe & Steel Corp. v. Firestone Tire & Rubber Co., 292 F.2d 640 (9th Cir. 1961), and United States v. Taylor, 333 F.2d 633 (5th Cir. 1964), the district court concluded that the government's interest in ensuring a uniform interpretation of the termination for convenience provisions in this contract provided the "significant federal interest" necessary to pre-empt state law.  Linan-Faye Construction Co. v. Housing Authority of Camden, 847 F. Supp. 1191, 1197 (D.N.J. 1994).  These cases, however, do not dictate

this result.  While both of these cases applied federal law in interpreting a contract, the government interest was far more significant in those cases than in the case at hand.  In American Pipe & Steel, the Court of Appeals for the Ninth Circuit stated, "we agree generally with appellee that the construction of subcontracts, let under prime contracts connected with the national security, should be regulated by a uniform federal law." American Pipe & Steel, 292 F.2d at 644.  The instant case involves no matter of national security.  Further, the court in American Pipe & Steel expressly acknowledged that the development of the law in this area was "still uncertain and unclear."  Id. Similarly, in Taylor, the contract at issue involved the construction of an atomic energy plant, a matter intricately involved with national security during the 1950's and 1960's. Taylor, 333 F.2d at 635.  The Taylor court also explicitly referred to the fact that American Pipe & Steel dictated application of federal common law in such a case.  Id. at 637. Thus, both of these decisions concerned matters of national security that are simply not present in this case.[3]

---

[3].  Still another distinction exists between the instant case and the cases the district court relied upon in applying federal common law to interpret this contract.  American Pipe & Steel and Taylor involved direct United States government procurement contracts, or a subcontract with a United States government prime contractor.  American Pipe & Steel, 292 F.2d at 641; Taylor, 333 F.2d at 635. Neither of these situations involved, as is the case here, the outright grant of funds to a public agency.  The closer nexus to the United States government in American Pipe & Steel and Taylor heightens the federal government's interest.  The weaker link in this case diminishes the significance of the

Moreover, the district court erred in finding <u>a</u> <u>conflict</u> between federal and state law that would endanger any federal interest involved.  The district court correctly recognized the proposition that a lawsuit which involves a federal interest is a "necessary, not a sufficient, condition for the displacement of state law."  <u>Linan-Faye Construction Co.</u>, 847 F. Supp. at 1198 (quoting <u>Boyle</u> 487 U.S. at 507, 108 S. Ct. at 2516).  The court, however, failed to identify a significant conflict.  In the only paragraph that attempts to identify a conflict, the court stated:

> We find it implausible that the federal government would require all CIAP contracts in excess of $10,000.00 to contain a termination for convenience clause, and then leave interpretation of that clause to the vagaries of state law, particularly where, like New Jersey, there are few or no state law cases interpreting this type of provision.  Rather, we believe that the decision to include a termination for convenience clause in the "Uniform Requirements" section of the C.F.R. reflects a federal interest in a consistent interpretation of that clause.

<u>Id.</u>

The first sentence of this paragraph merely assumes the answer to the question the court is wrestling with: whether Congress left interpretation of clauses in these types of contracts to state law.  The second sentence of the above quoted

(..continued)
government interest.  Thus, the district court was incorrect in finding a government interest significant enough to warrant deviating from <u>Erie</u> and applying federal common law.

paragraph simply reidentifies the interest involved, it does not point out a conflict with state law.

The problem with the district court's reasoning is highlighted by its own analysis of what the outcome would be under state law. The court states, "[e]ven assuming that New Jersey law were to apply, we have no basis for believing that New Jersey courts would look elsewhere than to federal common law for guidance." Id. If New Jersey courts, as is likely, would look to federal common law to decide this question for which there is little state law precedent on point, then the court is incorrect in its assertion that a conflict exists. The outcome would be the same under both federal and state common law. Thus, the court erred in applying federal common law and not the law of New Jersey to resolve this dispute and we must reverse with the direction that the district court resolve all remaining issues in accordance with New Jersey law.

IV. NEW JERSEY LAW

Having decided that it is the law of New Jersey that governs the interpretation of this contract, we must now decide whether Linan-Faye is correct when it argues that the general principles of contract damages under New Jersey law would permit Linan-Faye to recover full expectation damages under this contract rather than those damages provided for under the

contract's termination for convenience clause.  Citing A–S Development, Inc. v. W.R. Grace Land Corp., 537 F.Supp. 549, 557 (D.N.J. 1982), aff'd 707 F.2d 1388 (3d Cir. 1983), and other cases,[4] Linan–Faye states that under New Jersey law one who breaches an agreement must compensate the injured party in order to put the non-breaching party in as good a position as he would have been in had performance been rendered as promised.  Further, Linan–Faye argues that New Jersey courts have declined to import federal procurement concepts into their contract law jurisprudence. See Edwin J. Dobson, Jr., Inc. v. Rutgers, 157 N.J. Super. 357, 418, 384 A.2d 1121, 1152 n.10 (1978) ("The policy factors that have lead [sic] to the development of this concept in federal contracts, such as a need to expand or abandon a particular arms program with consequent economic impact on contractors and subcontractors, do not warrant state courts adopting it wholesale by judicial fiat when traditional remedies for breach of contract are available."), aff'd sub nom., Broadway Maintenance Corp. v. Rutgers, 180 N.J. Super. 350, 434 A.2d 1125 (A.D. 1981), aff'd, 90 N.J. 253, 447 A.2d 906 (1982).  While the cases Linan–Faye cites stand for these general propositions, such

---

[4].  Linan–Faye also cites Donovan v. Bachstadt, 91 N.J. 434, 453 A.2d 160 (1982), for the proposition stated above.  Further, Linan–Faye cites In Re Merritt Logan, Inc., 901 F.2d 349, 357–58 (3d Cir. 1990) and Sandler v. Lawn–A–Mat Chemical & Equipment Corp., 141 N.J. Super. 437, 454, 358 A.2d 805 (A.D.), certification denied, 71 N.J. 503, 366 A.2d 658 (1976), for the proposition that the courts of New Jersey have long maintained a liberal rule of damages to a non-breaching party.

generalities provide insufficient guidance in deciding the proper construction of a contract that contains a termination for convenience clause.[5]

It is undisputed that there are no cases in New Jersey construing the effect of termination for convenience clauses. It is also undisputed that there are numerous federal cases dealing specifically with termination for convenience clauses and, in particular, with the doctrine of constructive termination for convenience. Therefore, as the district court stated, "courts in New Jersey would recognize that where the parties have incorporated a particular clause pursuant to federal regulation, they do so against the backdrop of federal case law addressing the clause." Linan-Faye Construction Co., 847 F. Supp. at 1198. Accordingly, we align ourselves with the district court in its determination that if New Jersey law were to apply, New Jersey courts would look to this rich body of federal common law concerning the termination for convenience doctrine, unless to do so would violate some enshrined principle of New Jersey law. Id. Like the district court, we are unable to discern such a principle.[6]

---

[5]. Additionally, the quoted language in Dobson represents only the opinion of a single judge on this matter. The relevant issue was not addressed in the New Jersey Supreme Court opinion affirming this case.

[6]. Linan-Faye argues that decisions of the New Jersey Supreme Court such as W.V. Pangborne & Co. v. New Jersey Dept. of Transportation, 116 N.J. 543, 562 A.2d 222 (1989), where the court has found against governmental entities, are inconsistent

## V. TERMINATION FOR CONVENIENCE

Because the New Jersey Supreme Court would likely look to federal common law as persuasive authority in order to construe this contract's termination for convenience clause, we must examine the parties' contentions in light of the relevant federal case law.[7] As a preliminary matter, we must determine the method HACC used to terminate Linan-Faye. HACC argues that it terminated Linan-Faye by letter of September 25, 1990, and this letter constituted a termination for convenience. Linan-Faye, on the other hand, argues that this letter constituted a default termination. Linan-Faye has the better of this argument.

(..continued)
with the broad discretion federal courts have conferred on the government in cases concerning termination for convenience clauses. Pangborne, however, involved a failure of a governmental entity to deal in good faith. Id. at 562, 562 A.2d at 231 ("DOT's failure . . . to deal expressly and clearly with this material term constitutes a breach of an implied duty of good faith and fair dealing and the supervening obligation of the government to deal scrupulously with the public."). Federal common law also looks disfavorably on the government in cases of governmental bad faith. See infra Part V. Therefore, Linan-Faye's argument is unpersuasive.

[7]. We recognize that the district court also applied federal common law to resolve this dispute. Linan-Faye Construction Co. 847 F. Supp. at 1198. Nevertheless, there is a difference between looking to federal common law as persuasive authority and being bound by federal law. The district court opted for the latter approach and determined that construction of the termination for convenience clause was purely a matter of federal common law. In light of our previous holding in Coastal General, 27 F.3d at 917, we opt for the former approach.

HACC's letter of September 25, 1990 is replete with references to defaults on the part of Linan-Faye. HACC stated in the letter that Linan-Faye's correspondence evidences Linan-Faye's "intent to avoid compliance with the specifications." Letter from HACC to Norman Faye (September 25, 1990); App. Vol. I at 114. Further, HACC stated in its letter that Linan-Faye had "continually failed to demonstrate its intent to perform under the public contract" and that "it is clear" Linan-Faye is "no closer to performing its contract obligations then it was in September of 1988." Id. at 114, 115. Nowhere in this letter does HACC state that it is terminating Linan-Faye simply for convenience. It is apparent from this document that HACC originally terminated Linan-Faye for default.[8]

Given HACC's original termination of Linan-Faye for default, the question that we must reach is whether the court should retroactively convert this termination for default into a

---

[8]. HACC argues that the last paragraph of this letter which states that HACC has "instructed the Modernization Office to assist [Linan-Faye] as needed in obtaining release of [Linan-Faye's Bond]," App. at 115, is inconsistent with a default termination because if HACC had terminated for a default it was entitled to hold onto the bond. Just because HACC had the right to hold onto the bond under the contract, however, does not mean that it intended to exercise this right at the time of the letter. HACC may not have felt that the defaults it cited, such as a failure to begin work, were compensable via the bond, or it may have decided that it did not wish to encourage litigation over the bond issue. In any event, this paragraph provides insufficient support for HACC's argument that this letter constituted a termination for convenience.

termination for convenience.  HACC argues, based on a number of cases from the United States Court of Claims and the Court of Appeals for the Federal Circuit,[9] that the district court did not err in invoking the constructive termination for convenience doctrine in order to convert this default termination into a termination for the convenience of the Housing Authority.  Linan–Faye argues that under federal common law the doctrine of constructive termination for convenience has no application to this case.  According to Linan–Faye, Federal Acquisition Regulations (FAR's) applicable to direct procurement contracts provide for a "conversion clause," a clause that automatically converts a termination for default into a termination for convenience.  48 C.F.R. § 49.401(b) (1993).  Linan–Faye suggests, therefore, that because no such regulations exist in grant situations[10] such as this, there is an expressed intent that such a conversion not be allowed.  We find Linan–Faye's argument unpersuasive.

---

[9].  See discussion infra this part.

[10].  HACC received a grant pursuant to the Public and Indian Housing Comprehensive Improvement Assistance Program ("CIAP"). CIAP grants, which are administered by HUD, require recipients to set forth various terms and conditions in their agreements with contractors.  24 C.F.R. § 968.110(j) (1994).  The regulations concerning CIAP grants, collected at 24 C.F.R. § 85.1 et seq., differ from the FAR's applicable to direct government procurement contracts.  The CIAP grant regulations do not provide for a mandatory conversion clause.

The absence of a conversion provision in regulations concerning CIAP grants does not preclude application of federal common law.  While the FAR's have an explicit conversion clause, it was the federal common law that originally developed the concept of termination for convenience, and later developed the concept of constructive termination for convenience.  We find it appropriate to apply federal common law.

The idea that the government can, under certain circumstances, terminate a contract without paying full expectation damages, dates from the winding down of military procurement following the civil war.  Torncello v. United States, 681 F.2d 756, 764 (Ct. Cl. 1982).  The termination for convenience doctrine originated "in the reasonable recognition that continuing with wartime contracts after the war was over clearly was against the public interest."  Id.  Where the government terminates a private contractor pursuant to a termination for convenience clause in a contract, instead of receiving full expectation damages the contractor's recovery is defined by the termination for convenience clause.  Recovery is limited to "`costs incurred, profit based on the work done, and the costs of preparing the termination settlement proposal.'" Maxima Corp. v. United States, 847 F.2d 1549, 1552 (Fed. Cir. 1988) (quoting R. Nash & J. Cibinic, Federal Procurement Law 1104 (3d ed. 1980))  After World War II, termination for convenience

came to be applied to peacetime non-military procurement. Id.
(citing Torncello, 681 F.2d at 765-66).

Constructive termination for convenience, an outgrowth
of termination for convenience, is a judge-made doctrine that
allows an actual breach by the government to be retroactively
justified.[11] Maxima Corp., 847 F.2d at 1553. This doctrine has
its origins in the Supreme Court's decision in College Point Boat
Corp. v. United States, 267 U.S. 12, 45 S. Ct. 199 (1925). In
that decision, the Supreme Court held:

> A party to a contract who is sued for its breach may
> ordinarily defend on the ground that there existed, at
> the time, a legal excuse for nonperformance by him,
> although he was then ignorant of the fact. He may,
> likewise, justify an asserted termination, rescission,
> or repudiation, of a contract by proving that there
> was, at the time, an adequate cause, although it did
> not become known to him until later.

College Point, 267 U.S. at 15-16, 45 S. Ct. at 200-01 (footnotes
omitted) (emphasis added).

The decision of the Court of Claims in John Reiner &
Company v. United States, 325 F.2d 438 (Ct. Cl. 1963), cert.

---

[11]. The "government" involved in these cases is typically the
United States government. In the instant case, the entity
seeking to terminate for convenience is the Housing Authority of
Camden. While the doctrine of constructive termination for
convenience originally developed to allow the United States
government maximum flexibility to deal with military contractors
during times of war, the expansion of this doctrine into areas
other than those involving military contracts suggests that its
precepts should be applied to all government entities that
provide services to the public. Of course, the final word on
this issue rests with the New Jersey Supreme Court.

denied, 377 U.S. 931, 84 S. Ct. 1332 (1964), demonstrates the operation of this doctrine. In John Reiner, the plaintiff contracted with the government to supply generator sets to the Army. Id. at 439. Following delivery of a written contract, but before performance commenced, the government notified the plaintiff that the contract was canceled and that the contract would be rebid because of an impropriety in the original bidding procedure identified by a competitor. Id. Nevertheless, no such impropriety was found to exist. Id. at 442. The Court of Claims, therefore, was forced to consider the proper measure of damages to the contractor. In answering this question, the court determined that while the government did not rely on the termination for convenience clause in canceling the contract with the plaintiff, because it could have so relied, the measure of damages was limited to the damages provided for in that clause. Id. at 443. According to the court, even though the excuse originally offered was not a "valid justification," a "good ground did exist in the far-reaching right to terminate under the termination article." Id. This case granted the government great latitude in retroactively terminating contracts for convenience.

Perhaps the high-water mark of courts' permissiveness in allowing the government to terminate for convenience, constructively or otherwise, was Colonial Metals Co. v. United States, 494 F.2d 1355 (Ct. Cl. 1974), overruled in part by

Torncello v. United States, 681 F.2d 756 (Ct. Cl. 1982).  In that case, a dealer in copper contracted with the government to sell copper ingot to the Navy.  Id. at 1357.  The government terminated this contract to obtain the copper ingot from other sources at a cheaper price.  Id.  The court held that even where the government knew of the better price elsewhere at the time it awarded the contract and then later decided to terminate the contract to pursue the better price, in the absence of proof of malice or conspiracy, termination was not improper.  Id. at 1361.

Termination for convenience, and its expansion into the constructive termination for convenience doctrine, however, does not confer upon the government a discretion that is unbounded. In granting the government the privilege of constructive termination for convenience, courts brush up against the problem of allowing the government to create an illusory contract.  See Torncello, 681 F.2d at 769 (when evaluating a termination for convenience, one cannot ignore hornbook law that "a route of complete escape vitiates any other consideration furnished and is incompatible with the existence of a contract.").  Accordingly, courts have articulated limits on the use of the constructive termination for convenience doctrine in various ways.  For instance, in Torncello the Court of Claims stated that the constructive application of a termination for convenience clause requires "some kind of change from the circumstances of the bargain or in the expectations of the parties"  Id. at 772.  In

Kalvar Corp. v. United States, 543 F.2d 1298, 1301 (Ct. Cl. 1976), cert. denied, 434 U.S. 830, 98 S. Ct. 112 (1977), by contrast, the court's inquiry into whether to prevent the government from receiving the benefit of the termination for convenience clause focused on whether the government evidenced any bad faith in terminating the contract. Pointing out that the court is required to presume good faith on the part of public officials, the court in that case determined that the contractor could not avoid the application of the termination for convenience clause. Id. at 1301–02; see also SMS Data Products Group, Inc. v. United States, 19 Cl. Ct. 612, 617 (1990) ("This court presumes that Government officials act in good faith.").

In this matter, the district court concluded that under the bad faith test it was proper to allow HACC to invoke the doctrine of constructive termination for convenience. Additionally, the district court commented that even under the changed circumstances test of Torncello, the deterioration in the relationship between HACC and Linan-Faye would constitute sufficiently changed circumstances to apply this doctrine. We agree with the district court's decision that it was appropriate to apply the constructive termination for convenience doctrine in this case for two reasons. First, Linan-Faye has produced insufficient evidence of bad faith on the part of HACC to overcome the presumption that public officials act in good faith. Second, this case is very different from Torncello.

In Torncello, the government awarded a private contractor the right to service all of the Navy's pest control needs.  Torncello, 681 F.2d at 758, 762.  However, after awarding the contract to this contractor, the Navy called the Department of Navy Public Works to perform the task because this organization, from its initial bid, appeared to be able to do the work cheaper.  Id. at 758.  The government invoked the constructive termination for convenience doctrine arguing that since it had never called the private contractor to perform any actual work, the private contractor was not entitled to any damages.  Id. at 759.  Limiting its decision in Colonial Metals, the court held, in an opinion joined by only three of six judges, that the requirement of the government's good faith is not sufficient and that without other checks, free termination for convenience is not supportable. Id. at 771.[12]

In the matter at hand, Linan-Faye does not claim that HACC terminated its contract to obtain the work at a cheaper price.  Linan-Faye also does not claim that HACC terminated the contract in order to obtain work from a lower bidder who was known to HACC at the time it contracted with Linan-Faye.  Indeed,

---

[12]. Notably, the disagreement among the judges in that case was on the precise issue of whether it was appropriate to create a stricter test for convenience terminations by the government. Id. at 773-774 (Friedman, C.J., Davis, J., and Nichols, J. concurring)  While all the judges agreed on the result in that case, the court could not muster a majority to embrace the new "changed circumstances" test.

Linan-Faye points out in its brief that it was the low bidder for the project. Brief of Linan Faye at 1. Thus, the divisive facts presented in Torncello are not present here.

Moreover, subsequent cases have limited the scope of Torncello. The Court of Appeals for the Federal Circuit, for example, has stated that Torncello "stands for the unremarkable proposition that when the government contracts with a party knowing full well that it will not honor the contract, it cannot avoid a breach claim by adverting to the convenience termination clause." Salsbury Industries v. United States, 905 F.2d 1518, 1521 (Fed. Cir. 1990), cert. denied, 498 U.S. 1024, 111 S. Ct. 671 (1991); see also T.I. Construction Co. v. Kiewit Eastern Co., No. 91-2638, 1992 WL 382306, at *9 (E.D.Pa. Dec. 10, 1992) (citing language in Torncello indicating that its holding was limited to the facts presented); Modern Systems Technology Corp. v. United States, 24 Cl. Ct. 699, 704 (Cl. Ct. 1992) (applying bad faith test and reading Torncello to stand only for the above stated proposition), aff'd, 980 F.2d 745 (Fed. Cir 1992). In addition, in a subsequent case, the United States Claims Court stated that "Torncello did not change the traditional understanding" that the "Government could invoke the clause so long as it did not act in bad faith or clearly abuse its discretion." SMS Data Products, 19 Cl. Ct. at 619-20. In light of these developments, and considering the division among the court in Torncello, we decline to read that case as significantly

limiting the power of the government in terminating for convenience.[13]

As the district court recognized, the post award deterioration of the relationship between HACC and Linan-Faye which included conflict over the specifications would likely constitute sufficiently changed circumstances to justify application of the doctrine of constructive termination for convenience even under the reasoning in Torncello. See Embrey v. United States, 17 Cl. Ct. 617, 624-25 (1989) (deterioration of business relations considered sufficiently changed circumstances to allow government to terminate for convenience); see also SMS Data Products, 19 Cl. Ct. at 621 (genuine concern that contractor could not meet the contract's mandatory requirements constituted changed circumstances). Without establishing a litmus test as to what constitutes changed circumstances, which is unnecessary in view of subsequent limits on Torncello, we hold that New Jersey courts, looking to federal law as persuasive authority, would permit HACC to invoke the constructive termination for

---

[13]. Linan-Faye also cites a law review note written shortly after the Torncello decision in support of its claims. Stephen N. Young, Note, Limiting the Government's Ability to Terminate For Its Convenience Following Tornecello [sic], 52 Geo. Wash. L. Rev. 892 (1984). In that note, the author suggests that Torncello provides a reason to eliminate the government's right to constructively terminate for convenience. Id. at 911. As this author was writing without the benefit of recent decisions, all that can be said of his recommendation is that future courts declined to take the hint.

convenience doctrine in this instance.[14]  Accordingly, damages

will be limited by the termination for convenience clause of the

contract.[15]

[14].  The dissent states that the majority "holds that a
deterioration in business relations, demonstrated in not
insignificant part by a dispute over specifications, constitutes
such a change in circumstances."  See infra at 12 (emphasis
added).  The dissent is incorrect insofar as it reads this to be
the holding of our decision.  As we have already explained,
Torncello, and its changed circumstances approach, has been
sharply limited by more recent cases.  See discussion supra this
Part.  We have therefore declined to endorse wholeheartedly the
changed circumstances approach.  Accordingly, an accurate
statement of our position is that (1) Linan-Faye has not
demonstrated actual bad faith on the part of HACC and (2) this
case does not present the divisive facts presented in Torncello
that warranted finding against the government.

[15].  At oral argument, Linan-Faye suggested that the application
of paragraph 16(d) of the General Conditions of this Contract
"trumps" the constructive application of the paragraph 17
termination for convenience clause.  Paragraph 16(d) states, in
pertinent part:

> The Contractor's right to proceed shall not be terminated or
>     the Contractor charged with damages under this clause
>     if:
>
> (1) The delay in completing the work arises from
>     unforeseeable causes beyond the control and without the
>     fault or negligence of the Contractor.  Examples of
>     such causes include (1) acts of God, or of the public
>     enemy, (ii) acts of the PHA or other governmental
>     entity in either its sovereign or contractual capacity
>     (iii) acts of another contractor in the performance of
>     a contract with the PHA (iv) fires . . . .

App. Vol II at 45.

This subsection of paragraph 16 carves out an exception to when
HACC can terminate for default.
     While Linan-Faye's argument goes to whether HACC breached
the agreement in terminating for default, it cannot prevent
application of the constructive termination for convenience

VI.  COMPENSATION IN LIGHT OF THE TERMINATION
     FOR CONVENIENCE CLAUSE

Having determined that the termination for convenience clause is applicable in this case, we must next decide whether the district court erred in granting summary judgment for HACC and denying Linan-Faye all compensation.  Linan-Faye contends that the district court exceeded its role at the summary judgment stage because there still remain six contested issues concerning its contract claim.  According to Linan-Faye, the district court erred in determining: (1) the definition of "work performed" under the contract; (2) there was no evidence of compensable pre-termination expenses under the contract; (3) the reason why HACC retained Linan-Faye's performance bond; (4) that Linan-Faye "refused" to begin work; (5) that Linan-Faye misunderstood the contract specifications; and (6) that there was proper HUD approval of the contract's termination.

Our scope of review is plenary in determining the propriety of summary judgment.  <u>Oritani Savings & Loan Ass'n v. Fidelity & Deposit Co.</u>, 989 F.2d 635, 637 (3d Cir. 1993). Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

(..continued)
doctrine.  The very premise of the <u>College Boat</u> decision is that a party may defend a suit <u>for breach</u> on the grounds that a legal excuse existed at the time of the alleged breach.  <u>College Boat</u>, 267 U.S. at 15-16, 45 S. Ct. 200-01.  Thus, whether HACC breached its agreement by terminating the contract for default is largely beside the point.

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). Further, at the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986).

Three of the issues that Linan-Faye raises are genuine issues of material fact in dispute. The other issues concern facts that are either not material, or are not in dispute. We will reverse the decision of the district court granting summary judgment on those issues where there is a genuine issue of material fact in dispute.

A. Definition of "Work Performed" under the Contract

Linan-Faye argues that the trial court improperly selected isolated phrases from correspondence between the parties in its determination that the phrase "work performed" in paragraph 17 of the contract[16] refers only to "physical construction" and not to preparatory work. The district court conceded that the contract documents, which include the contract's General Conditions and its Supplement to the Standard Form Agreement, failed to define the term "work." Linan-Faye

_____

[16]. See supra note 1 for the text of paragraph 17.

Construction Co., 847 F. Supp. at 1206.  Based on an analysis of the word "work" as used in several paragraphs of the contract, the district court concluded that "work" could not include "preparatory work" until after Linan-Faye began physical construction on the project.  Id. at 1207.  We conclude that the district court erred in determining this disputed issue of fact.

Paragraph 8(a) of the General Conditions of this contract is the paragraph from which the district court draws the most support for its conclusion that "work" under the termination for convenience clause does not include "preparatory work."  The court's reading of this paragraph, however, is too strained to support a grant of summary judgment.  Paragraph 8(a) of the General Conditions states:

> Progress payments will be made at approximately thirty (30) day intervals; and in preparing estimates, acceptable work in place, material delivered to and properly stored on the site, and preparatory work done will be taken into consideration.  If the contract covers more than one project, a separate estimate shall be furnished for each.

App. Vol. II at 42.  From this paragraph, the district court deduced that expenses for preparatory work were recoverable only if the contractor begins the physical construction required under the contract.  Linan-Faye Construction Co., 847 F. Supp. at 1207. This conclusion is unjustified.

There is nothing in the language of paragraph 8(a) that speaks to situations where HACC terminates Linan-Faye for convenience after Linan-Faye has performed preparatory work, but

before it has begun physical construction.  If anything, the language of this paragraph demonstrates that both parties considered preparatory work to be a compensable cost because the paragraph states that preparatory work will be taken into consideration in preparing estimates for compensation.  Thus, the district court erred in concluding that this paragraph is dispositive.

The district court's survey of numerous other paragraphs containing the word "work" also produces inconclusive results.  According to the court, paragraph 2 which requires the contractor to "furnish all necessary labor, materials, tools, equipment, water, light, heat, power, transportation, and supervision necessary for performance of the work," and paragraph 22 which allows the contractor to request from the architect drawings "which will [be required] in the planning and production of the work" somehow indicate that "work performed" under paragraph 17 does not include preparatory work.  Id. at 1206 (emphasis added).  These provisions, on their face, do not appear to support any such conclusion.  In addition, the district court determined that paragraphs 26, 29 and 35, which refer to the contractor's obligation to protect "work completed to date" and to the warranty as to "work done," support the conclusion that work performed under the termination for convenience clause does not include preparatory work.  Once again, if anything, these provisions merely beg the question of how to define "work" under

paragraph 17 of the contract.  Finally, the court refers to paragraphs 7 and 31 that speak to obligations of the contractor before and shortly after "commencing work" under the contract. Unfortunately, these paragraphs also do not illuminate whether the parties considered preparatory work to constitute compensable work for purposes of the termination for convenience clause.[17]

Linan-Faye asks for the opportunity to present testimony and cross-examine witnesses concerning the intent of the parties in using the phrase "work performed" in paragraph 17 of the contract.  Based on the evidence mustered by the district court, we cannot conclude that there is no dispute as to this issue.  Further, this issue is material to the question of what constitutes proper compensation under paragraph 17.  Therefore, Linan-Faye should be allowed to present the evidence that it feels is appropriate to determine the intent of the parties. Accordingly, we hold that the district court erred in granting summary judgment for HACC on this disputed issue.

### B.  Evidence of Pre-Termination Expenses

---

[17]. The district court also refers, in a footnote, to letters exchanged between the parties that purportedly explain the understanding of the parties concerning the definition of "work performed."  The fact that the court goes beyond the contract and looks to these letters to reinforce its conclusion demonstrates the impropriety of granting summary judgment and the need to make such decisions on a more fully developed record.

Related to the disputed issue of the definition of "work performed" under the contract is the issue of whether Linan-Faye produced any evidence of pre-termination expenses compensable as "work-performed." The district court determined that Linan-Faye "had presented no evidence of expenses that would merit an equitable adjustment to the contract." Id. at 1208 n.22. Linan-Faye argues that the certification which it submitted in opposition to HACC's third motion for summary judgment provides the requisite evidence. Linan-Faye is correct.

The district court, at this early stage of the litigation, improperly concluded that there was "no evidence" of expenses compensable under the termination for convenience clause. Linan-Faye described 15 types of expenses that Linan-Faye incurred preparing for work on the HACC contract. Certification of Norman Faye (October 21, 1993); App. at 231-33. While many of these "expenses" may not be compensable, some of the stated expenses, such as time spent "with municipal building, plumbing and electrical inspectors regarding job phasing, contract details, code requirements, and problem solving," may be compensable if the parties so intended under the termination for convenience clause of the contract. Cf. ITT Defense Communications Division, Nos. 11858, 13439, 1970 ASBCA Lexis 29, at *56 (July 29, 1970) (cost of work done by appellant in preparing and submitting configurations that were never used still properly compensable under the termination for convenience

clause); Navgas, Inc., No. 9240, 1964 ASBCA Lexis 1139, at *29 (November 18, 1964) (costs of investigating work to be done, and determining the best way to perform the contract, if awarded, are properly compensable under termination for convenience clause). Although, on the whole, the evidence produced by Linan-Faye in this certification appears meager, by granting summary judgment for HACC the district court improvidently prevented the plaintiff from developing the record more fully. There was not a complete lack of evidence. Accordingly, we must reverse the grant of summary judgment on this issue and remand for trial.

In remanding for trial on this issue, however, it is important to explain precisely the scope of our holding. We do not hold that Linan-Faye is entitled to pre-termination expenses that accrued as the result of any alleged pre-termination breaches of contract by HACC. As the district court correctly held, cases that have addressed the issue of pre-termination breaches have concluded that claims for such damages are subsumed in the termination for convenience clause. Linan-Faye Construction Co., 847 F. Supp. at 1203, 1204 (citing Nolan Brothers, Inc. v. United States, 405 F.2d 1250 (Ct. Cl. 1969)); Descon System Ltd. v. United States, 6 Cl. Ct. 410 (1984)). Pre-termination expenses that accrued as the result of any alleged pre-termination breaches by HACC are not compensable. On remand, the triable issue is limited to a determination of the pre-termination expenses which Linan-Faye incurred that the parties

intended to be compensable as "work performed" under the termination for convenience clause of the contract.

## C. Why HACC Retained Linan-Faye's Performance Bond

Linan-Faye next contends that the trial court improperly resolved a factual dispute as to why HACC retained Linan-Faye's performance bonds after terminating Linan-Faye. According to Linan-Faye, it is entitled to damages arising from HACC's failure to return this performance bond. Linan-Faye alleges that by retaining its bond, HACC prevented it from accepting other construction contracts and used the bond as an inducement to force Linan-Faye to accept an unreasonable resolution of this dispute. HACC argues that it retained Linan-Faye's performance bond because Linan-Faye instituted a suit seeking specific performance and if Linan-Faye were successful, HACC would need Linan-Faye's bond.

This issue is not resolved solely by reference to the termination for convenience clause because the events that give rise to this claim occcured after termination.[18] Recognizing

---

[18]. Linan-Faye argues that it is entitled to damages because of HACC's improper withholding of its performance bond both before and after termination. Concerning Linan-Faye's claim for damages for pre-termination withholding of the bond, we agree with the district court that such damages are not recoverable because the termination for convenience clause controls and does not provide for such recovery. Claims arising from events following termination, however, would not be governed by the termination for convenience clause.

this, the district court decided the issue by concluding that keeping the bonds during the pendency of the litigation was the "logical response" to the plaintiff's lawsuit.  Linan-Faye Construction Co., 847 F. Supp. at 1205.

Unfortunately, there is no testimony or record evidence to support the conclusion that HACC engaged in the "logical response" posited by the district court.  No one from HACC ever indicated that it was Linan-Faye's suit for specific performance that prevented HACC from returning the bond.  Counsel for HACC simply raised this argument when the case took on a litigation posture.  This naked assertion by counsel, without record support, is not sufficient to warrant a grant of summary judgment.

The district court attempts to justify its decision to accept HACC's argument by referring to the September 25, 1990 termination letter sent by Gregory Kern, the Interim Executive Director of HACC.  Nevertheless, its reasoning is unpersuasive. According to the court, Mr. Kern's letter which indicated that HACC would return the bonds was sent before Linan-Faye instituted suit.  Linan-Faye, 847 F. Supp. at 1205 n.16.  Therefore, the court reasoned, "[t]he decision of the HACC to depart from Mr. Kern's original plan only supports [the] finding that HACC felt compelled to hold onto the bonds until the Court had disposed of plaintiff's claims for specific performance." Id. (emphasis added).  The court in this passage, however, merely assumes its

conclusion.  What eludes the district court is <u>any evidence</u> indicating that it was the suit for specific performance that <u>caused</u> retention of the bond.  In effect, what the district court stated is that the decision of HACC to depart from Kern's original plan supports HACC's decision to depart from Kern's original plan -- a statement without significance.

Moreover, even taking HACC's view of the timing of the relevant events, there was an unjustified gap of over one month between the time HACC terminated Linan-Faye and the time Linan-Faye served its complaint seeking specific performance.  According to HACC, after it issued its September 25, 1990 letter of termination, Linan-Faye sought reversal of HACC's decision to terminate.  HACC states that it sent a letter to Linan-Faye on October 23, 1990 confirming its decision to terminate.  Linan-Faye did not serve its complaint for specific performance until early in December of 1990, however, and the bond had not yet been returned.  This unexcused delay strengthens Linan-Faye's argument that HACC did not decide to hold onto the performance bond as the result of the specific performance suit.  In light of these facts, we will reverse the district court's grant of summary judgment for HACC and remand for trial on this disputed issue.[19]

---

[19].  We recognize that Linan-Faye's complaint in this matter does not set forth a theory of recovery for damages due to improper retention of the performance bond following termination.  Indeed, the complaint could not set forth such a theory because the events giving rise to this aspect of Linan-Faye's claim (i.e., HACC's continued refusal to relinquish the bond during the pendency of the specific performance action) did not occur until

D.  Whether Linan-Faye "Refused" to Begin Work.

Linan-Faye asserts that the district court improperly found it "refused" to begin work.  According to Linan-Faye, it did not refuse to begin work, but merely wanted to agree on any changes that HACC desired before it began construction.  Linan-Faye contends that there is no basis in the record for the district court's finding that it flatly refused to begin work.

We find that the question of whether Linan-Faye flatly refused to begin work is immaterial to this case.  Whether Linan-

(..continued)
after the complaint was filed.  Nevertheless, the district court made findings on this issue.  Linan-Faye, 847 F. Supp. at 1205.  Further, both parties briefed and argued the issue before this Court and HACC did not argue that the issue was not properly before the district court.  Accordingly, we find it appropriate to set forth the applicable theory of recovery on remand.
On remand, the theory upon which damages would be predicated is the common law action of detinue (or its modern counterpart).  According to the New Jersey Supreme Court, "[t]he gist of the common law action of detinue was that [the] defendant originally had and acquired possession of the chattels lawfully, as by finding or bailment, but holds them subject to the plaintiff's superior right to immediate possession which has been asserted by a demand."  Baron v. Peoples National Bank of Secaucus, 9 N.J. 249, 256, 87 A.2d 898, 901 (1952).  At common law, the appropriate remedy in a detinue action where property has been unlawfully detained is a judgment for the value of the property and damages in detention.  Id.
Here, HACC lawfully received Linan-Faye's performance bond pursuant to a contract between the parties.  Following termination, however, HACC's legal right to retain the bond is the subject of the dispute that must be resolved on remand.  If the jury were to find HACC liable for improper retention of the bond, the appropriate measure of damages would be compensation for jobs lost by Linan-Faye (after termination) that resulted from HACC's improper action.

Faye actually "refused" to begin work would be relevant if it was necessary to decide if Linan-Faye defaulted on its obligations. The district court, however, based its holding on the doctrine of constructive termination for convenience. Linan-Faye Construction Co., 847 F. Supp. at 1203. The constructive termination for convenience doctrine makes the original reason for termination relevant only to the extent that it evidences the government's bad faith or a change in circumstances from the time of contracting.[20] The issue of whether there was an actual default by Linan-Faye in refusing to begin work is immaterial. In this case the default termination is converted into a termination for convenience of the government by operation of law. Since we agree with the district court that it was appropriate to apply the constructive termination for convenience doctrine, we hold that this issue is immaterial.

E.    Whether Linan-Faye Misunderstood the Specifications

Linan-Faye argues that the district court improperly concluded that it misunderstood the contract specifications because the court indicated in a footnote that "[a]t the very least, plaintiff misinterpreted the architect's specifications" for the project. Linan-Faye Construction Co., 847 F. Supp. at 1203 n.13. According to Linan-Faye, it was HACC who

_____

[20]. See infra Part V for analysis of the constructive termination for convenience doctrine.

"misinterpreted" the contract specifications. The dispute over proper interpretation of the contract specifications, argues Linan-Faye, prevented the court from resolving this issue at the summary judgment stage.

Linan-Faye's argument misinterprets the district court's reasoning. The relevant statement the court made in this footnote is merely that there was discord between the parties over interpreting their agreement. The district court mentioned the discord to support its conclusion concerning the constructive termination for convenience doctrine. Whether Linan-Faye actually misunderstood the specifications, or whether it was HACC's misunderstanding, is irrelevant where there is a termination for convenience. As the district court held, the constructive termination for convenience doctrine operates to allow the government to extricate itself from contractual relationships without arguing as to which party was in default. Id. at 1203. Accordingly, the issue of who misunderstood the contract specifications is not material, and played no part in the order granting summary judgment.

F.  Whether HUD Approval was Necessary for Termination

Linan-Faye suggests that whether HUD approved a termination for convenience is a disputed issue that precludes summary judgment. It concedes that HACC obtained HUD's general approval to terminate the contract, but argues that HUD never

approved a termination for convenience.  Linan-Faye contends that HUD approval of a termination for convenience was a condition precedent to invoking that clause, and failure to obtain such approval precludes summary judgment.  Linan-Faye does not succeed in raising a disputed material issue on this point.

For the purposes of deciding this case, the district court did not assume that HACC originally terminated for convenience.  While there is a dispute as to whether the original letter of termination constituted a default termination or a termination for convenience, HACC prevails under the district court's reasoning without having to prove that it obtained HUD approval of a termination for convenience.  The court proceeded on a constructive termination for convenience theory.  Linan-Faye does not dispute that HUD had approved HACC's right to terminate generally.  Thus, concerning the original termination, HACC fulfilled its obligations by informing HUD, and obtaining from HUD a general approval for the termination of the contract.  Because HACC received general HUD approval to terminate, there is no bar to this court's using the constructive termination for convenience doctrine to convert this into a termination for convenience by operation of law.  Further, and most importantly, there is simply no dispute as to the material facts of what approval HACC obtained.  Indeed, both parties concede that HACC obtained HUD approval to terminate generally, but did not obtain specific HUD approval of a termination for convenience.

Therefore, this cannot be a disputed factual issue as Linan-Faye erroneously contends.

Accordingly, we will reverse the district court's grant of summary judgment and remand for trial on the issues of: (1) the definition of "work performed" under paragraph 17 of the contract; (2) the pre-termination expenses incurred by Linan-Faye that are compensable as "work performed" under the termination for convenience clause; and (3) HACC's possible liability for damages resulting from its retaining Linan-Faye's bond after termination.

## VII. SECTION 1983

Linan-Faye next asserts that the district court erred in granting summary judgment against it on its claim under 42 U.S.C. § 1983. Linan-Faye argues it has a protectible property interest in its contract with HACC that is entitled to Fourteenth and Fifth Amendment protection. Further, Linan-Faye contends that HACC's retention of its performance bond implicates a liberty interest entitled to constitutional protection. In granting summary judgment, the district court held that whatever property interest Linan-Faye may have had, it does not rise to a sufficient level of certainty or dependency to merit constitutional protection. Linan-Faye Construction Co. v. Housing Authority of Camden, 797 F. Supp. 376, 380 (D.N.J. 1992).

We agree with the district court's resolution of this matter.  This Court recently surveyed the law concerning Fourteenth Amendment claims based on contracts with state entities.  Unger v. National Residents Matching Program, 928 F.2d 1392 (3d Cir. 1991).  We stated in Unger that it is beyond dispute today that a contract with a state entity can give rise to a property right protected under the Fourteenth Amendment.  Id. at 1397 (citing Perry v. Sindermann, 408 U.S. 593, 599-601, 92 S. Ct. 2694, 2698-2700 (1972)).  Nevertheless, we stated that the Supreme Court has never held that every state contract gives rise to such a protectible property interest.  Id.

As we explained in Unger, relevant Supreme Court cases and cases from other courts of appeals instruct that two general types of contract rights are recognized as property protected under the Fourteenth Amendment: (1) where "the contract confers a protected status, such as those `characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits'"; or (2) where "the contract itself includes a provision that the state entity can terminate the contract only for cause."  Id. at 1399 (citing S & D Maintenance Co. v. Goldin, 844 F.2d 962, 966-67 (2d Cir 1988)).  In Unger, a physician licensed to practice medicine in Pennsylvania was admitted into Temple University Hospital's dermatology residency program through the National

Resident Matching Program.  Id. at 1393.  Shortly before Unger

was to begin the program, she received a letter stating that the

University had decided to discontinue the program.  Id.  Unger

filed suit under 42 U.S.C. § 1983.  Id.

Declaring that the contract in Unger did not fall into

either of the two protected categories, we dismissed Unger's §

1983 claim.  Id. at 1402.  We relied in part on the reasoning of

our previous decision in Reich v. Beharry, 883 F.2d 239 (3d Cir.

1989), where we stated:

> Many . . . courts have observed that if every breach of
> contract by someone acting under color of state law
> constituted a deprivation of property for procedural
> due process purposes, the federal courts would be
> called upon to pass judgment on the procedural fairness
> of the processing of a myriad of contract claims
> against public entities.  We agree that such a
> wholesale federalization of state public contract law
> seems far afield from the great purposes of the due
> process clause.

Reich, 883 F.2d at 242 (citations omitted).

Linan-Faye's contract with HACC does not fall into

either of the two categories we delineated in Unger.  The

contract does not confer a protected status on the plaintiff and

the state entity could terminate the contract for reasons other

than for cause.  Indeed, it could be terminated for convenience.

To grant Linan-Faye a remedy under § 1983 would create the

wholesale federalization of state public contract law that

concerned us in Unger and Reich.  Accordingly, the district court

did not err in granting summary judgment for HACC on Linan-Faye's claim.

Turning to Linan-Faye's assertion that it has been deprived of a constitutionally protected liberty interest, we also find that the district court did not err in granting summary judgment for HACC. The Court of Appeals for the Second Circuit addressed a case factually similar to the one at hand in S & D Maintenance Co. v. Goldin, 844 F.2d 962 (2d Cir. 1988). In that case, a contractor brought a § 1983 claim against the City of New York, claiming that the City's withholding of payments under a contract to maintain parking meters resulted in the contractor being left with insufficient capital to pursue other work. Id. at 963, 970. The court held that although the consequential damages of an alleged breach may be severe, this fact alone cannot convert a contract claim into a deprivation of liberty. Id. at 970. We agree with the reasoning of the Court of Appeals for the Second Circuit, and conclude that Linan-Faye fails to establish a claim of constitutional magnitude. We will affirm the district court's grant of summary judgment to HACC on Linan-Faye's § 1983 claim.

VIII. ESTOPPEL CLAIMS

Linan-Faye's final contention is that HACC is precluded from refusing to pay compensation by reason of principles of equitable and judicial estoppel. Linan-Faye argues that HACC

could have terminated for convenience in 1988 but that it did not, and it breached a duty of fairness by waiting two years before deciding to terminate. Linan-Faye relies on a single case, M. & O. Disposal Co. v. Township of Middletown, 100 N.J. Super. 558, 242 A.2d 841 (A.D. 1967), aff'd, 52 N.J. 6, 242 A.2d 841 (1968), to support its equitable estoppel argument. Additionally, Linan-Faye argues that because HACC asserted in prior judicial proceedings that there would be a "defined measure of damages" under the termination for convenience clause, HACC is now judicially estopped from arguing that it owes Linan-Faye nothing.

We find Linan-Faye's equitable estoppel claim unpersuasive. HACC could have terminated for convenience in 1988, but it also could have pursued completion of the contract according to its terms. HACC's decision to terminate after an inability to agree to such terms does not breach a duty of fairness. Indeed, this termination was within HACC's rights under the contract and, as explained above, the constructive termination for convenience doctrine allows HACC to convert its original termination into a termination for convenience.

Moreover, Linan-Faye's reliance on M. & O. Disposal is misplaced. That case involved the question of whether a municipality impliedly ratified a contract for extra work which was outside the scope of contract to dispose of garbage. Id. at 560, 567, 242 A.2d at 841, 846. In that case, the New Jersey

court merely stated the general precept that equitable principles of estoppel will be applied against municipalities where the interests of justice, morality, or common fairness clearly dictate this course. Id. at 567, 242 A.2d at 846. Beyond the obvious fact that the timing problem presented here has almost nothing to do with the ratification issue presented in M. & O. Disposal, Linan-Faye has failed to demonstrate how HACC's exercise of its rights under this contract violates principles of justice, morality, or common fairness. Thus, we find Linan-Faye's equitable estoppel argument unconvincing.

Linan-Faye's argument for judicial estoppel is also unpersuasive. Judicial estoppel precludes a party from assuming a position in a legal proceeding inconsistent with one previously asserted to the prejudice of an adverse party. Brown v. Allied Plumbing & Heating Co., 129 N.J.L. 442, 446, 30 A.2d 290, 292 (Sup. Ct.), aff'd 130 N.J.L. 487, 33 A.2d 813 (E. & A. 1943); Chattin v. Cape May Greene, Inc., 243 N.J. Super. 590, 620, 581 A.2d 91, 107 (A.D. 1990) (citations omitted), aff'd, 124 N.J. 520, 591 A.2d 943 (1991). There is no inconsistency in taking the position that HACC took in prior proceedings. HACC merely argued that the termination for convenience clause provided the defined measure of damages. After the district court decided the difficult question of whether the termination for convenience clause defines the measure of damages, it was not only appropriate, but necessary, for HACC to address the question of

what the measure of damages is under that clause.  At this later stage, HACC may contend that this clause provides no compensation for Linan-Faye in this instance.  The attempt by Linan-Faye to describe a contradiction in HACC's legal position has no force under the facts presented in this case.

## IX. CONCLUSION

In sum, we find that the district court erred in its decision to apply federal common law and not the law of New Jersey to resolve this dispute.  Applying New Jersey law, we will reverse the district court's grant of summary judgment and remand for trial on the issues of material fact that are in dispute. The three issues that remain in dispute in this case are the definition of "work performed" under paragraph 17 of the contract, whether and to what extent Linan-Faye incurred preparatory expenses prior to termination that are compensable as "work performed" under paragraph 17, and HACC's possible liability for damages resulting from its withholding of Linan-Faye's performance bond after termination.  Finally, we will affirm the district court's grant of summary judgment in favor of HACC on Linan-Faye's § 1983 claim.

Linan-Faye Construction Co., Inc. v. Housing Authority of the City of Camden, No. 94-5193.

BECKER, Circuit Judge, Concurring and Dissenting.

I join in Parts I, II, and III of the majority opinion. However, I dissent from Part IV because I do not agree that New Jersey would apply to this garden variety construction dispute between a builder and a local governmental agency precepts drawn from a potpourri of federal cases which amount at best to a hodge podge, and at worst to a regime so inhospitable and unfair to small contractors who deal with government agencies as to be inconsistent with New Jersey jurisprudence. Rather, I believe that New Jersey would apply its own law, which would not recognize the doctrine of "constructive termination for convenience" but rather would apply the normal rule of contract breach which, on this record, would unquestionably render HACC liable. Moreover, even if the New Jersey Supreme Court were to assimilate federal law, I do not think that it would read that law in the matter predicted by the majority. The precepts that the majority applies are gleaned from cases that have been excoriated in critical commentary because they are in considerable measure poorly reasoned.

I also find myself unable to join in Part VII, dealing with Linan-Faye's 42 U.S.C. § 1983 claims. I cannot agree with the majority that HACC's arguably improper retention of Linan-Faye's performance bond, which the company requires in order to

engage in any business, did not impair Linan-Faye's liberty interest. I do, however, join the majority with respect to its rejection of Linan-Faye's property interest claim.[21]

## I. WHAT LAW WOULD NEW JERSEY APPLY?

The majority, notwithstanding the considerable authority of the Dobson case, supra Maj. Op. at 13, reasons that because there are no cases in New Jersey construing the effect of termination for convenience clauses, "courts in New Jersey would recognize that where the parties have incorporated a particular clause pursuant to federal regulation, they do so against the backdrop of federal case law addressing the clause," and hence would adopt federal law, whatever that may be. That is the sum and substance of the majority's argument. It is, I suggest, pretty "thin soup," neither documented nor reasoned.

The majority's prediction also ignores the facts that should govern the analysis required in such circumstances. A review of the facts Linan-Faye has advanced and supported in connection with the summary judgment motion -- which are glossed over by the majority -- will illuminate the correct prediction of New Jersey law. At this stage, these facts must obviously be

_____

[21]. I take no position on Parts VI.B through F and VIII of the majority opinion, as they are outside the ambit of this effort, except to note that the discussion of HACC's delay in invoking the termination for convenience clause, see Part VIII, supports my views insofar as it highlights the dubiousness of HACC's ex post reliance thereon.

viewed in the light most favorable to Linan-Faye, the non-moving party.  See Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976).

### A.  The Facts Viewed in the Light Most Favorable to Linan-Faye

It is undisputed that the parties had a binding $4,264,000 contract for the rehabilitation of 244 housing units. Linan-Faye, with declarations cognizable in summary judgment proceedings: (1) represents itself to be an experienced, highly regarded contractor that was ready, willing, and able to perform the job in a timely fashion; (2) states that through incompetence, poor planning, or other contractors' delay, the HACC failed or refused to give Linan-Faye even a Notice to Proceed for a full year; and (3) submits that after finally giving that Notice, HACC then proceeded, without justification, to delay Linan-Faye for almost another year.  Linan-Faye also represents that HACC never supplied Linan-Faye with a list of which vacant units to work on; that turmoil reigned at HACC as the Executive Director was replaced by a new Acting Executive Director, Gregory Kern, in July 1990; and that Kern decided to "clean house" by, inter alia, summarily terminating Linan-Faye's contract.

It is also undisputed that in the course of the termination dialogue, HACC never suggested that the termination

was "for convenience." All the discussion and written notices instead alleged contractor default, which Linan-Faye staunchly denied. Moreover, whether or not it was legally required, HACC never got HUD approval to terminate for convenience. Indeed, HACC did not invoke the termination for convenience clause until two years after termination, when the litigation began. Most importantly, during the period from September 1988 through August 1991, HACC held Linan-Faye's performance bonds, effectively precluding Linan-Faye from bidding any other significant work. Linan-Faye has proffered evidence that it suffered damages of $1,492,000 as a result of HACC's breach of the contract and a further loss of $1,249,999 from its inability to use its bonding line.

### B.  General New Jersey Contract Law Principles

Under general common law contract principles, applicable in New Jersey and elsewhere, one who breaches a contract must compensate the injured non-breaching party so as to put it in the position it would have occupied had performance been rendered as promised. Donovan v. Bachstadt, 453 A.2d 160, 165 (N.J. 1982); 5 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 992 (1951). A court in a breach of contract case aims to fashion a remedy in order to compensate the non-breaching party fully. Donovan, 453 A.2d at 165; 5 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 992 (1951).

The New Jersey courts have long maintained a liberal rule that non-breaching parties are entitled to damages. Cf. In re Merritt Logan, Inc., 901 F.2d 349, 357 (3d Cir. 1990) (interpreting New Jersey contract damages law); Sandler v. Lawn-A-Mat Chem.& Equip. Corp., 358 A.2d 805, 814 (N.J. Super. Ct. App. Div.), cert. denied, 366 A.2d 658 (N.J. 1976) (non-breaching party "presumptively" entitled to damages, with doubts resolved against the breaching party). New Jersey courts have also narrowly construed clauses that tend to restrict a party's right to recover its full common law damages. See American Sanitary Sales Co. v. State, 429 A.2d 403, 407 (N.J. Super. App. Div.), cert. denied, 434 A.2d 1094 (N.J. 1981) (narrowly interpreting a "no damage for delay" clause in a New Jersey state contract).

The reluctance of the New Jersey Courts to give expansive effect to exculpatory clauses extends to cases involving its own government agencies. See, e.g., Buckley & Co., Inc. v. State, 356 A.2d 56, 62 (N.J. Super. Ct. Law Div. 1975); Ace Stone, Inc. v. Township of Wayne, 221 A.2d 515, 518-19 (N.J. 1966); American Sanitary Sales Co., 429 A.2d at 407; see also Department of Transp. v. Arapaho Constr., Inc., 357 S.E.2d 593, 594-95 (Ga. 1987) (relying in part on Ace Stone). Moreover, under New Jersey law there is a presumption against finding a contractual intent to alter common law rights and remedies. See, e.g., Gibraltar Factors Corp. v. Slapo, 125 A.2d 309, 310 (N.J. Super. Ct. Law Div. 1956) (parties presumed to contract with

reference to existing law), aff'd, 129 A.2d 567 (N.J. 1957), appeal dismissed, 355 U.S. 13 (1957); see also Rescigno v. Picinich, 377 A.2d 733, 739 (N.J. Super. Ct. Law Div. 1977) (applying a presumption against a statutory intent to alter common law rights); Blackman v. Iles, 71 A.2d 633, 636 (N.J. 1950) (same).  Indeed, New Jersey courts commonly award contractors common law contract damages against the State, including damages for delay.  See, e.g., American Sanitary Sales Co., 429 A.2d at 407; Buckley & Co., 356 A.2d at 65 (see also cases cited therein).

### C.  New Jersey and the Federal Law Alternative

This is not the first case in which a court applying New Jersey law has had to adjudicate a contract dispute with some federal connection.  In Edward J. Dobson, Jr., Inc. v. Rutgers, 384 A.2d 1121 (N.J. Super. Ct. Law Div. 1978), aff'd sub nom. Broadway Maintenance Corp. v. Rutgers, 434 A.2d 1125 (N.J. Super. Ct. App. Div. 1981), aff'd, 447 A.2d 906 (N.J. 1982), plaintiff-contractors sought to avoid the impact of a "no-damage for delay" clause by asserting their claim for delay as an "equitable adjustment."  The court traced the history of the "equitable adjustment" provisions in federal construction contracts and federal regulations.  But the court refused to import this wholly federal concept into the New Jersey law of public construction

contracts.  Finding that the term "equitable adjustment" had
become a term of art in federal contracts, the court held:

> The policy factors that have lead [sic] to
> the development of this concept in federal
> contracts, such as a need to expand or
> abandon a particular arms program with
> consequent economic impact on contractors and
> subcontractors, do not warrant state courts
> adopting it wholesale by judicial fiat when
> traditional remedies for breach of contract
> are available.  Id. at 1153 n.10.

This holding was affirmed by both the intermediate appellate
court and Supreme Court of New Jersey and strongly suggests that
New Jersey courts would not import the federal concept of
constructive termination for convenience into its public
construction contracts jurisprudence.

As the majority correctly points out, because there is
no reported New Jersey precedent interpreting a "termination for
convenience" clause, it is the function of this court to predict
how the New Jersey Supreme Court would rule if confronted with
this issue.  In my view, there is no reason to believe that that
court, if called upon to resolve the question, would jettison a
century of settled contract law supporting liberal contract
remedies and narrowly construing similar exculpatory provisions
in order to adopt a harsh -- and harshly criticized, see infra --
federal interpretation of the clause at issue here.  In this
case, the retroactive application of this dramatic change in the
law imposed by the majority to the factual scenario described
above not only exacerbates the harshness of the result but also

increases my confidence that the New Jersey Supreme Court would
never have adopted this interpretation.

### D.  The Termination of Convenience Provision and Its Harsh Construction by the Majority

The termination for convenience clause has, as the
majority explains, a long lineage, dating from the Civil War era.
During that era federal government contracting was attended by
much impropriety and scandal.  See generally CARL SANDBURG, ABRAHAM
LINCOLN, THE WAR YEARS (1948).  The modern (post-1970) incarnation
of the clause is ensconced in the Code of Federal Regulations:

> If the contractor can establish, or if it is
> otherwise determined that the contractor was
> not in default or that the failure to perform
> is excusable; i.e., arose out of causes
> beyond the control and without the fault or
> negligence of the contractor, the [prescribed
> default clauses] provide that a termination
> for default will be considered to have been a
> termination for the convenience of the
> Government . . . .

Federal Acquisition Regulations ("FAR's"), 48 C.F.R. § 49.401(b)
(1993).  The FAR's apply to direct United States government
procurement (including HUD procurement).  They do not apply to
grants of federal funds to local public housing authorities.  The
district court acknowledged this undisputed point.  (Dist. Ct.
Op. at 18 n.7)

Moreover, regulations that govern grants to local
housing agencies contain their own specific scheme and procedures
for federally funded contracts made by state and local housing

authorities that are separate and distinct from the FAR's. These "CIAP" requirements mandate a variety of terms and provisions that must be set forth in such contracts, including a termination for convenience clause. See 24 C.F.R. § 85.36(i)(2). In contrast to the FAR's, however, the Administrative Requirements for CIAP Grants do not include any counterpart to the automatic conversion language of 48 C.F.R. § 49.401(b), or the other specific termination provisions found in HUD's own FAR's. This is consistent with the mandate of the CIAP enabling statute, which is designed to allow the housing authority grantees maximum discretion and individualized judgment. 42 U.S.C.S. § 14371(e)E, (e)(4)(D) (1994).

The absence of an express conversion clause in the Administrative Requirements for Grants is significant because, under the venerable maxim of statutory construction, expressio unius est exclusio alterius, the inclusion of one is the exclusion of another. As I see it, the exclusion of an automatic conversion provision in the Requirements for Public Housing Authority Contracts (when specifically included in HUD's own FAR's) expresses an intent to exclude such a provision, unless local PHA administrators choose to include it. Cf. Marshall v. Western Union Tel. Co., 621 F.2d 1246, 1251 (3d Cir. 1980) (refusing to apply a Department of Labor standard in one subsection of a regulation where it had been excluded when it was included elsewhere); SUTHERLAND STATUTORY CONSTRUCTION § 31.06 (4th

ed.).  Moreover, without the conversion clause, HACC's initial failure to allege that it was terminating the contract with Linan-Faye for convenience prevents HACC from subsequently embracing that argument.

Before contracts with the federal government included automatic conversion clauses, courts did not permit government agencies to use the termination for convenience clauses to escape from a breach.  In Klein v. United States, 285 F.2d 778 (Ct. Cl. 1961), for example, the Court of Claims rejected the government's argument that, because it had a contractual right to terminate for convenience, its illegal breach of contract should be disregarded.  Id. at 784.  Accord Goldwasser v. United States, 325 F.2d 722, 725 (Ct. Cl. 1963); Dynalectron Corp. v. United States, 518 F.2d 594, 604 (Ct. Cl. 1975); Torncello v. United States, 681 F.2d 756, 771-72 (Ct. Cl. 1982); Rogerson Aircraft Corp. v. Fairchild Indus.Inc., 632 F. Supp. 1494, 1499 (C.D. Cal. 1986) (changed circumstances required).

The problems confronted by government contracting officers operating under the Klein rule resulted in the adoption of the automatic conversion clause by regulation, 48 C.F.R. § 49.401(b).  The clause now appears in most direct federal government procurement contracts.  However, as the Rogerson court noted in footnote 5 of its opinion, where the "automatic conversion clause" is not made part of the contract, either expressly or by regulation, the Klein rule remains fully

applicable and bars the implication of such clause. Rogerson, 632 F. Supp. at 1500 n.5. Although the contract in Rogerson appears more specific than the instant contract in its requirement that the agency elect its basis for termination (i.e., default or convenience), the Rogerson decision remains important and persuasive. Without a conversion clause, HACC cannot invoke the termination for convenience provision to cure its improper default termination. And a wrongful termination for default constitutes a breach of the contract entitling the wrongly terminated subcontractor to state law damages for the breach, including lost profits. Id. at 1500-01; Clay Bernard Sys. Int'l, Ltd. v. United States, 22 Cl. Ct. 804, 810-11 (1991) (holding that absent a "conversion clause" a wrongful termination for default is a breach, entitling contractor to recovery under federal procurement law).

But even if HACC had initially invoked its termination for convenience clause, thus avoiding the issue of the absence of a conversion clause, HACC could not avoid liability in this case. The majority acknowledges that the case law construing the termination for convenience clause has retrenched from its high water mark. While the majority's discussion does not clearly depict the current state of the law, the leading cases appear to hold that government agencies can only invoke the clause where there has been some change in the circumstances of the parties. See Torncello, 681 F.2d at 772. The majority holds that a

deterioration in business relations, demonstrated in not insignificant part by a dispute over specifications, constitutes such a change in circumstances. In my view, such a rule would largely eviscerate the limitation. As lawyers who have dealt with construction disputes know, these contracts almost always generate some dispute over specifications, and any construction dispute rancorous enough to spawn litigation will almost certainly have led to the requisite deterioration in business relations. The facts of this case illustrate how circular a deterioration-of-business-relations test can be, for HACC did not even attempt to invoke the clause until litigation began.

The majority constructs a regime under which a dispute arising out of a garden variety contract between a builder and a local housing authority, which is not a federal government contract but only a local agency contract to which certain federal regulations apply, has been severed from its common law roots. The majority's application of selected federal cases renders these local agency contracts virtually illusory by giving an arguably defaulting local agency the right to avoid its own breach, and sharply limit its liability simply by incanting the termination for convenience clause two years after the fact. In my view, it is inconceivable that the New Jersey Supreme Court, which has so consistently supported liberal awards of contract damages, would countenance that result, especially in the fact scenario at bar.

This conclusion is strongly buttressed by the scathing criticism that has been levied at <u>Torncello</u> and the cognate jurisprudence.  <u>See, e.g.</u>, Stephen N. Young, Note, <u>Limiting the Government's Ability To Terminate for Convenience Following Tornecello</u>, 52 GEO. WASH. L. REV. 892 (1984) (suggesting that the <u>Torncello</u> decision provides a reason to eliminate the government's ability to terminate for convenience entirely).

Because I do not believe that the New Jersey Supreme Court would adopt the federal interpretation but would instead continue to give exculpatory clauses such as the termination for convenience clause only narrow -- if any -- effect, I dissent.[22]


## II.  THE § 1983 CLAIM

I also dissent from the majority's affirmance of the summary judgment granted on Linan-Faye's § 1983 claim.  While I agree that Linan-Faye's interest in the contract did not rise to a property interest protected by the Constitution, I cannot agree that HACC's unjustified retention of Linan-Faye's performance bond did not deprive Linan-Faye of a protected liberty interest.

The majority dismisses Linan-Faye's claim rather summarily, overlooking precedent which would, in my view, require

---

[22].  As my discussion explains, I believe that this result would follow even if New Jersey were to look to federal law, for I do not think New Jersey would read federal law so expansively as does the majority.

reversal.  The right to follow a chosen profession free from unreasonable interference comes within both the liberty and property concepts of the Fifth and Fourteenth Amendments.  See Greene v. McElroy, 360 U.S. 474, 492 (1959); Piecknick v. Commonwealth of Pennsylvania, 36 F.3d 1250, 1259 (3d Cir. 1994); Bernard v. United Township High Sch. Dist. No. 30, 5 F.3d 1090, 1092 (7th Cir. 1993).  It is true that the Constitution protects only the right "to pursue a calling or occupation, and not the right to a specific job."  Bernard, 5 F.3d at 1092 (quoting Wroblewski v. City of Washburn, 965 f.2d 452, 455 (7th Cir. 1992)).  Nevertheless, the majority and the sole case on which it relies, S & D Maintenance Co. v. Goldin, 844 F.2d 962 (2d Cir. 1988), fail to consider how disputes over specific jobs can, under certain circumstances, affect a party's pursuit of its occupation.

In S & D, although the Court of Appeals for the Second Circuit framed the § 1983 claim as one challenging the plaintiff's dismissal from government employment, which clearly did not rise to a constitutional violation, the true basis of the plaintiff's liberty claim was that New York City's refusal to pay amounts already due had essentially forced the company out of business and left it "tottering near bankruptcy, unable to get work, as a direct result of the city's alleged breach of the contracts and withholding of payments."  S & D, 844 F.2d at 970. While I believe that S & D may be in error to the extent it

denies that the plaintiff's claim implicated a protected liberty interest, the instant case provides an even stronger claim. Whereas the city defendant in S & D could argue that the plaintiff was not entitled to the amounts that it alleged it had already earned, HACC cannot make any such argument about its (arguably unjustified) failure to return Linan-Faye's own performance bond. Also, when HACC interfered with Linan-Faye's (pre-existing) capacity to obtain large construction contracts, the core of its business, it brought this case into close resemblance to those cases where the state actors are held liable under § 1983 for revoking or interfering substantially with a person's license to pursue a chosen occupation. Cf. Herz v. Degnan, 648 F.2d 201 (3d Cir. 1981) (finding violation of a property interest in the revocation of a professional license).

Without the use of its bonding line, Linan-Faye was paralyzed: It could not bid on any significant contracts and thus could not replace the business lost through the government's breach. Hence, because HACC's arguably unjustified retention of the bond did impinge on protected liberty interests, the district court erred by awarding the defendant summary judgment on this claim. I therefore also dissent from the portion of the majority opinion that affirms this ruling.